# HIRAM LEONARD, AND SIDONIE LEONARD HIS WIFE *v.* JAMES B. TOWNSEND AND JAMES DONAHUE.

JUDGMENT AGAINST MARRIED WOMAN.—A judgment may be rendered against a married woman for costs in an action brought by her as sole plaintiff, concerning her separate property, and when so rendered an execution in the usual form may be issued on the same, and her separate property sold by the Sheriff, and the purchaser at the Sheriff's sale, upon receipt of the Sheriff's deed, acquires a valid title thereto.

MARRIED WOMEN AS PARTIES TO ACTIONS.—The seventh section of the Practice Act places married women, in respect to the cases therein mentioned, upon a common level with all other parties to actions, and imposes on them the responsibilities it imposes on other parties.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The execution upon which the property of Sidonie Leonard was sold was in the usual form prescribed by statute in cases of personal judgment for costs.

The other facts are stated in the opinion of the Court.

*E. W. F. Sloan,* and *Delos Lake,* for Appellants.

The formal judgment for costs, and all the proceedings thereon had, including the Sheriff's deed, were void.

It is not pretended that Mrs. Leonard was a sole trader under the provisions of the Act of April 12th, 1852; or that she, in any manner, claimed the rights, or assumed the liabilities conferred by that Act; and, consequently, if there was authority for the entering up such judgment, or taking the proceedings thereon had, it is to be sought for in the common law. It cannot there be found.

It is a fundamental principle of the common law that no action at law can be maintained against a married woman. " For the judgment in that case would subject her person to imprisonment; and the husband's right to the person of his wife would be infringed, which the law will not permit in any case of a civil concern. And for the same reason there can be no personal decree against her in chancery. It must be one which reaches her property only." (Reeve's Dom. Rel. 171.) " It is now well settled that no *action* can be maintained against a married woman." (2 Roper on Husband and Wife, 178.)

" It has been observed that, by the common law—restored by the case of *Marshall* v. *Rutton*—a married woman was not allowed, except in special cases, to contract as a *feme sole;* nor as such to sue or be sued. That being the legal rule, the wife cannot, at law, bind herself by any contract in respect to her separate property. In conformity with this doctrine of the wife's disability, Courts of equity hold that her general personal engagements will not affect her separate property." * * * " If, therefore, the wife contract debts generally without any act indicating an intention specifically to charge her separate estate with the payment of them, a Court of equity will entertain no jurisdiction of such estate in the hands of her trustees to such purposes during her life." (2 Roper, 241; 8 Term R. 545.)

The exception which exists in case of a sole trader by the custom of London, need not here be noticed.

The other exception arises from necessity, and exists in those cases only where the husband is in law considered as dead, the wife being, as it were, in a state of widowhood; for instance, where the husband has been banished from his country during life, or has been transported for a number of years, or has abjured the realm, or where there has been a dissolution of the marriage by Act of Parliament. In all such cases the marriage contract being suspended, the wife is considered so far a *feme sole*, as to be able to contract, to pay and receive money, to sue and be sued, and liable even to be taken in execution. (2 Roper on H. and W. 123.) It may be regarded as the settled law, however, that the mere voluntary absence of the husband, though for many years, " will not place the wife in the situation of a *feme sole*, so as to restore the rights of disposition, personal liabilities, and powers which she parted with on entering into the marriage state." (2 Roper, 124; *Farrer* v. *Countess of Granard*, 1 B. & P. New. Rep. 80; *Chambers* v. *Donaldson et al.*, 9 East. 471; *Kay* v. *Duchess de Pienne*, 3 Camp. 124.)

It had been intimated by counsel, in the case last cited, that if the husband be an alien who never was in England, his wife residing there might be sued as a *feme sole*. But Lord Ellenborough thought it quite clear, since the case of *Marshall* v. *Rutton*, 8 T. R. 545, restored the common law on the subject, that where the alien husband had been living with his wife in England a year before she had given the note sued on, the suit against her could not be maintained.

The idea has been advanced, on the part of the respondents, that the reason why the wife could not be sued upon contract at law, was because at law she was not regarded as having a separate estate, except in land, in which her husband was entitled to the usufruct, and consequently, (as argued,) there could have been no execution, at law, of the judgment. If that were so, there would have been no difficulty in enforcing her ordinary personal engagements by a pecuniary decree in equity, irrespective of any intent to charge specifically her separate estate. That, however, cannot be done. It was said by Lord

Chancellor Loughborough, in *Hulme* v. *Tennaut,* 1 Bro. C. R. 21 : " I believe there is no instance of a personal decree against a *feme covert* for payment of any sum whatever. Though her personal property is liable, yet the decree is to fetch forth her separate estate, and make it liable to her engagement."

The doctrine of equity is, that " as incident to the power of enjoyment, she has the power of charging her separate property." (*Greatly* v. *Noble,* 3 Madd. Ch. R. 94.) The common rule that the wife cannot be sued on contract, is founded upon her want of capacity, at law, to enter into contract, except it be to charge her estate. Her mere personal obligation was not less void in equity than at law. Vice Chancellor Leach remarked, in *Stuart* v. *Viscount Kirkwall et al.,* 3 Madd. C. R. 388, " I had occasion to consider this doctrine fully, in *Greatly* v. *Noble;* I then was, and now am of opinion, that a *feme covert,* being incapable of contract, *this Court cannot subject her separate property to general demands.*"

The proposition sought to be maintained by respondents, that where a married woman is, by statute or otherwise, placed in the position of a *feme sole* for any purpose, she is to be so regarded for all purposes, is without any foundation. It is generally true, that where she is made a *feme sole* as to some specified transaction or branch of business, her rights, powers, and liabilities touching the same will be commensurate with those of an unmarried woman. But, as hereinbefore suggested, the statutory capacity of a married woman in this State, to exercise the rights and powers, and to incur the liabilities of a *feme sole* is, as a general rule, restricted to the case of a sole trader. (Act of April 12th, 1852 ; Wood's Dig. Art. 2,624.)

There seems to be but one exception to that general rule. By Act of February 14th, 1855, capacity is given to a married woman of legal age, to convey any estate or interest in land held by her in her own right, as perfectly as if she were unmarried, by executing an instrument of conveyance in the manner and form therein prescribed ; provided, the husband be not then, and for one year next preceding the execution

of the conveyance, had not been a *bona fide* resident of this State. (Wood's Dig. Art. 2,630.)

The power so conferred is only to be exercised under the special circumstances mentioned in the statute; is limited to the actual conveyance of land or of some estate or interest in it, which conveyance must be executed in form and manner prescribed. There is nothing, therefore, in either of the statutes referred to which can avail the respondents.

It is contended, however, by respondents, that the recovery of a judgment for costs by the party prevailing in the action is a matter of course. It is true that section four hundred and ninety-seven of the Practice Act provides that costs shall be allowed of course to the defendant upon a judgment in his favor in the actions mentioned in section four hundred and ninety-five.

It can hardly be said that a mere order dismissing a cause for want of prosecution, is a judgment. Be that as it may, however, it is certain that no judgment at law for costs can be entered up against a married woman, merely on the ground that she is sole plaintiff or defendant in the suit.

She cannot thus indirectly create a lien or incumbrance · upon her estate, whether legal or equitable; nor can she thus indirectly cause or suffer an alienation of it.

*Hoge & Wilson*, for Respondents.

The Court had power and jurisdiction to enter a judgment, whether the rightful one could only have been questioned on appeal from that judgment. Even if the judgment were "palpably erroneous, it is not void, but is binding until reversed, and cannot be treated as a nullity in a collateral suit." This law is too well settled to require authorities, but see: *Arnold* v. *Booth*, 14 Wis. 180; *Howard* v. *North*, 5 Texas, 290; *Stearns* v. *Aquire*, 7 Cal. 448; *Reynolds* v. *Harris*, 14 Cal. 678; *Thompson* v. *Tolmie*, 2 Pet. 163–165; *Ex parte Watkins*, 3 Pet. 202.

But there was not even error. The judgment for costs was rightly entered against her. By section seven of the Practice

Act she was made a free and independent suitor.   She became
an actor.  Like all others, she had the rights but at the same
time the responsibilities of a suitor.

" In this State the wife can appear in and defend an action
separately from her husband.   To enable her to do so, she
must possess, as defendant, all the rights of a *feme sole*, and
be enabled to make as binding admissions in writing in the
action as other parties."   (*Alderson* v. *Bell*, 9 Cal. 321.)

A wife can waive errors as well as her husband in a suit
against both.   (*Laird* v. *Thomas*, 22 Texas, 276.)

" The statute right of a married woman to litigate implies
her perfect capacity to do so, and she will be held responsible
for the acts of her attorney, and for the want of ordinary
diligence on her part."   (*Cayce* v. *Powell*, 20 Texas, 767.)

When she became a sole party plaintiff and brought her
action, the Practice Act applied to her as much as to any
other plaintiff.   Her suit was bound to conform to that stat-
ute, and she was known only as a party plaintiff, disrobed of
every other character.   The Chapter of the Practice Act on
the subject of costs applied to her as well as to others.   She
could not require the services of the officers without paying
costs.   Had she obtained judgment in her favor, costs, " of
course," would have been " allowed" her, because it was "an
action for the recovery of real estate."   (Sec. 495, Pr. Act.)

Why would she have been " allowed" costs " of course ?"
Because she would have been, in the language of that section,
" the plaintiff, upon a judgment in her favor."

If section four hundred and ninety-five applied to her, why
did not section four hundred and ninety-seven ?   It provides
that " Costs shall be allowed of course to the defendant upon
a judgment in his favor in the actions mentioned in section
four hundred and ninety-five, and in a special proceeding in
the nature of an action."

The greater part of the able brief of the appellants' counsel
is taken up with the discussion of the rights of married women
at common law, with a great deal of which we agree.   To
some portions we dissent, whilst we totally disagree with the

corollaries which are deduced from common law doctrines. It is asserted that "it is a fundamental principle of the common law, that no action at law can be maintained against a married woman." (Reeves' Dom. Rel., and Roper on Husband and Wife, are cited as authorities for that position.)

We have referred to 2 Roper on H. and W. 178, and do not find that doctrine announced. We refer to the edition printed in the 30 Vol. Law Library. But we do find in the same volume, at other pages, the contrary doctrine. There are very many cases where actions at common law could be maintained against married women, both *ex contractu* and *ex delicto*.

"Where the cause of action is founded upon a contract by the wife *dum sola*, as a debt contracted by her before marriage, the action must be brought against the husband and wife jointly." (2 Roper, 126.)

"Where the cause of action is founded on a tort, committed by the wife before marriage, as in trover, the husband and wife must be joined as defendants. Where the cause of action arises from a tort of the wife alone, during the marriage, as in an action for slander by her, or where it arises from a tort committed by the husband and wife together, the action lies against both." (Ib. 127.)

For numerous instances of actions maintained at common law against married women, and where personal judgments were rendered against them, see: 2 Hilliard on Torts, 163, 512–514; *Yates and Wife* v. *Reed and Wife*, 4 Blackf. 463; *Catterall* v. *Kenyon*, 3 Ad. & El. N. S. 315; *Mathews* v. *Fiestel and Wife*, 2 E. D. Smith, 91; *Austin and Wife* v. *Wilson and Wife*, 4 Cush. 273.

"The husband is liable for the torts and frauds of the wife committed during coverture. If committed in his company, or by his order, he alone is liable. If not, *they are jointly liable, and the wife must be joined in the suit with her husband.*" (*Wagener* v. *Bill*, 19 Barb. 324; 2 Kent's Com. 149.)

By the Court, SANDERSON, C. J.

This is an action by a husband and wife to recover a lot in the City and County of San Francisco, alleged in the complaint to be the separate estate of the latter. The case was tried by a referee, to whom it was referred with directions to try all the issues, both of law and fact, and report a judgment thereon. The referee reported a finding and judgment in favor of the defendants, and thereupon the plaintiffs moved the Court to set aside the report of the referee and grant a new trial upon the ground, in substance, that upon the facts as found by him the judgment should have been for the plaintiffs. By stipulation the report of the referee was made a statement of the case upon the motion for a new trial. The motion was denied, and the plaintiffs have appealed.

It appears from the finding of the referee that the plaintiff, Sidonie Leonard, then being the wife of the plaintiff, Hiram Leonard, in 1853 brought an action, as sole plaintiff, to recover the premises in controversy in the present action, against certain other parties then in possession. In that action she recovered judgment. This judgment was, however, reversed on appeal and a new trial ordered. The case was remanded to the District Court and placed on the calendar for that purpose. On the day appointed for the trial the plaintiff failed to appear and prosecute her action, and upon motion of the defendants it was dismissed at her costs. In due course the costs were taxed and judgment therefor entered against her. Upon this judgment execution was issued, and the premises which were in controversy in that action and in this were levied upon and sold to the defendant Townsend, who in due course obtained a Sheriff's deed therefor.

Upon the foregoing facts the referee held that the title of the plaintiff Sidonie Leonard passed to the defendant Townsend by the execution sale and Sheriff's deed, and accordingly rendered a judgment in favor of defendants.

The validity of the judgment under which the Sheriff's

sale to Townsend was made is the only question involved in this case.

It is contended on the part of the appellants that the judgment in question, and all the proceedings thereon, including the Sheriff's deed, are null and void, because, Mrs. Leonard being a married woman and not a sole trader, no valid judgment for costs could be rendered against her.

In support of this point the learned counsel for appellants have filed an able and ingenious argument, founded upon the principles of the common law touching the rights and disabilities of married women and the claim that those principles, so far as the question under debate is concerned, are unaffected by our Practice Act.   As we understand the argument, it is to the effect that our statute removes the common law disabilities of married women, so far as their capacity to sue in certain cases is concerned, but does not annex to that capacity the liabilities which are imposed by the statute upon all other suitors.

We do not think that the solution of the question under consideration is aided by a reference to the common law ; for assuming all that is claimed by appellants on that score the whole question still remains, which is simply whether (admitting that she can maintain the action only by virtue of the statute) she enjoys the right to sue upon the same terms and conditions as all other suitors, or enjoys it unincumbered with the liabilities which its exercise may entail upon them, and is to be solved in our judgment by a reference to the statute alone.

Title one of the Practice Act treats of civil actions and the parties thereto, and in the seventh section provides in what cases a married woman may sue and be sued, without imposing any conditions or bestowing any privileges.   Thus, in respect to the cases mentioned, she is put upon a common level with all other parties to actions, no discrimination being made in her favor or against her.   Thereafter the statute proceeds, and without any distinction as to persons, prescribes in general terms, applicable to all alike, the manner in which actions

shall be prosecuted and the nature and form of the judgments which shall be rendered, and the manner in which the same shall be executed. We nowhere find any provision excepting any party or class of parties, from the operation of any of these general rules. The provisions of the statute relating to judgments do not declare that judgments may be rendered in favor but not against married women; on the contrary, they merely provide in general terms when the plaintiff or the defendant shall have judgment and execution regardless of the fact whether they are male or female, married or unmarried. All the property of the judgment debtor, except as otherwise provided, regardless of the fact whether such debtor be male or female, married or unmarried, is declared subject to seizure and sale under execution. Thus we find in the statute no foundation upon which the theory of the appellants can stand, for it deals in general terms, and creates no exceptions in favor of any party or class of parties.

The provision of the Practice Act, allowing a married woman to sue alone is not, as counsel for appellants contend, merely the adoption of the old chancery rule allowing her in certain cases to sue by her "next friend." It is something more, for it allows her to sue alone. The office which the *prochein ami* performed was to be responsible for costs. The old form of suing by *prochein ami* is abolished, but the right of the opposite party to recover costs is unimpaired, and, as a necessary consequence, resulting from dispensing with the *prochein ami*, the married woman has herself been charged with the responsibility which previously attached to him; and there is no good reason why it should not be so. If she is to be regarded as a *feme sole* for any purpose connected with litigation, she ought to be so regarded for all. There is no justice in according to her all the advantages and benefits to be gained by an action, and at the same time exempting her from all risk and responsibility. If she is to be allowed the rights of a suitor, she must, in the absence of an express provision to the contrary, be held to take also the responsibilities of a suitor, for they ought not to be separated.

So far as we know, this precise question has not before arisen in this State ; but a question somewhat analogous arose in *Alderson* v. *Bell,* 9 Cal. 321, where the Court said : "In this State the wife can appear in and defend an action separately from her husband. To enable her to do so, she must possess, as defendant, all the rights of a *feme sole,* and be enabled to make as binding admissions in writing, in the action, as other parties." But the question has arisen in New York, from which State our system is borrowed, and has been there determined in accordance with the views entertained by us. In *Moncrief* v. *Ward,* New York Com. Pleas (reported in note to *Baldwin* v. *Kimmel,* 16 Abbott's Prac. R. 364,) this same question was involved, and it was held that an execution for costs against a married woman could be enforced against her separate estate, whether it contains a direction to that effect or not. Mr. Justice Brady said : "Having the right to sue, the power must be employed *cum onere.* The statute awarding costs does not exempt a married woman, either as plaintiff or defendant, from the payment of costs when unsuccessful. There is no just reason why she should be thus exempted. Having the status of a *feme sole* in the Courts, if she fail in her action it would be unjust to compel her adversary to resort to extraordinary modes to collect his costs. It cannot be that the Legislature intended this. It is true that, until the amendment of the code (Sec. 274) in 1862, the Legislature did not in express terms provide that costs could be recovered against her, but such was the effect of the statutes then in existence, as I interpret them. That amendment merely declared the necessary legal conclusion from the existing statutes ; no class of suitors, as already suggested, having been excepted from them. The execution to compel the payment of such costs must be enforced against her separate estate, whether so directed or not. It cannot be employed against the property of another person *per se.*"

But it is insisted on the part of the appellants that the foregoing case has no authority in this State, because the language of the New York statute is different and broader than ours,

and vests a married woman, to a great extent, with all the powers and liabilities of a *feme sole* touching her separate estate.

We are not able to perceive the difference between the two statutes claimed by counsel. The New York statute provides that she may sue or be sued " in the same manner as if she were sole ;" by ours she is authorized to sue or be sued " alone." We think the two expressions are equivalents. The effect of both is the same. Each removes the disability of coverture, and nothing more.

By the laws of Pennsylvania the property of a married woman is now kept as her separate estate, as in this State, and she is authorized to sue for it in her name alone. In the case of *Goodyear* v. *Bumbaugh and Wife*, 13 Penn. St. R. 480, the husband and wife joined as plaintiffs to recover the wife's separate realty. It was objected that the husband was misjoined. The Court said : " We see nothing in the exception of which the defendant can complain. He has two, instead of one answerable for costs."

The case of *Maclay* v. *Love*, decided by this Court at the last term, is cited by appellants in support of their position ; but we are at a loss to perceive upon what ground it can be claimed that their position is fortified by that case. The question involved in that case was as to the power of the wife to incumber or charge her separate estate by voluntary contract, and the mode and manner in which it can be legally exercised ; and we held that the mode and manner was prescribed by the statute defining the rights and duties of husband and wife, and no valid incumbrance could be voluntarily created in any other way. The decision in that case was grounded upon the statute applicable to the question then before us. The same is true of our decision in the present case. We here ground our decision upon the provisions of the Practice Act, by which alone the question before us is to be determined. We cannot reverse the judgment in this case without doing violence to the theory upon which *Maclay* v. *Love* proceeds, and we repeat what we said in that case as equally applicable to the present :

" The rights of the parties are fixed by statute, and the only duty or power of the Court is to enforce those rights in accordance with the spirit of the statute as plainly indicated by the letter. Had we never been educated under the double system of common and equity law, as they prevail in England and the older States, we should have little difficulty with the statute before us, as we apprehend, in determining the rights of the parties in respect to the questions under consideration." In this State we have, in many instances, whether wisely or unwisely, departed widely from the rules of the common law, and to a great extent established a new system by which to determine civil rights. This new system sometimes runs counter to the proverbial conservatism of the legal profession, but it must nevertheless be applied by the Courts, and it is well to study its provisions by its own light, rather than the dying embers of that which it was intended to entirely supplant.

Judgment affirmed.

Mr. Justice CURREY expressed no opinion.