# CHARLESTON.

43  211.
54  332

Buford *v.* Adair *et al.*

Submitted January 27, 1897—Decided March 31, 1897.

1. ABANDONED WIFE—*Foreign Residence—Separate Estate.*
   A married woman who has been wholly abandoned by her husband, permanently residing in another state or foreign country, under the rules of the common-law, as settled by the various decision of the various courts of the United States, is restored to all the powers of a *feme sole* as to her seperate property. This rule has been extended, modified or abrogated by the statutory enactments of various states. (p. 215.)

2. ESTOPPEL BY DEED—*Heir Apparent—Heirs.*
   By deed with covenants of general warranty, an heir apparent may estop herself from afterwards claiming her inheritance. Such estoppel extends to her heirs. (p. 217.)

3. ESTOPPEL—*Res Adjudicata—Material Fact.*
   A person who relies upon an adjudication as an estoppel cannot dispute the truth of the material fact on which such adjudication is predicated. (p. 217.)

4. ESTOPPEL—*Res Adjudicata—Adverse Title.*
   A party to a suit, who claims title adverse to a former adjudication of this Court, by which he is not bound, cannot rely on such adjudication as an estoppel against parties to such former suit. An estoppel, to be binding, must be mutual. (p. 217.)

5. APPOINTMENT.
   The case of *Thrasher* v. *Ballard*, 35 W. Va. 524, approved, but *held* not to be binding on the parties to the present litigation. (p. 215.)

Error to Circuit Court, Monroe County.

Action by N. W. Buford against Wm. Adair and others. Judgment for defendants, and plaintiff brings error.

*Affirmed.*

Jos. W. CALDWELL, ALEX. F. MATHEWS and LOGAN & PATTON, for plaintiff in error.

JOHN OSBORNE and L. J. WILLIAMS, for defendants in error.

Dent, Judge:

An ejectment suit instituted in the Circuit Court of Monroe county by N. W. Buford against William Adair *et al.* resulted in a judgment for defendants. The plaintiff obtained a writ of error. The facts are as follows: Daniel Stoner deceased, on the 12th day of March, 1845, executed a deed to William Nossinger, trustee, conveying personal and real estate as recited in the deed, "to have and to hold the said tract or parcel of land, and the slaves, bonds and debts and personal property to him the said William Nossinger his heirs or agents by him appointed for the purposes following, That is to say in Trust for the said Matilda Stoner and he the said William Nossinger will & shall permit the said Matilda Stoner during her life to receive and take all the issues rent hires, profits, and interest of the said property, debts, bonds moneys, slaves lands, stock, & apply & do with as she may think proper and the said William Nossinger will permit the said Matilda & the right is hereby given her to dispose of the aforesaid property by will and give such portion thereof as she may think proper to the said Daniel Stoner or the children which they now have or any which they may hereafter have in case the said Matilda Stoner should survive her husband and all of her children, She can dispose of all of the estate as she may think proper. It is further understood that if any of the Children of the said Daniel & Matilda, or any which they may hereafter have, shall marry or arrive of age, that the said William Nossinger shall give to such child, or children such part of the property aforesaid as the said Matilda shall direct. And it is further understood, that if at any time the said William Nossinger should remove from this county or if the said Matilda should wish to have another Trustee appointed in his stead; the said William Nossinger shall appoint such Trustee as the said Matilda shall desire & he the said William Nossinger shall have no further power to act as Trustee of this Deed, & it is further understood, that the said William Nossinger or such Trustee as may be by him appointed is hereby fully authorized & empowered to receive, recover & collect by all lawful means all the property & effects whether real or personal, debts or moneys belonging or owing to the said Daniel Stoner to be applied

as above directed." Afterwards, by successive conveyances, said Daniel Stoner became the trustee, in lieu of William Nossinger. Daniel and Matilda Stoner had two children—Lucy J., who became the wife of L. C. Thrasher, and Letitia S., who inter-married with one Buford by whom she had two sons, the plaintiff being one of them, who claims to hold by purchase his brother's interest in the subject-matter in controversy. On the 30th day of May, 1863, Daniel Stoner, Matilda, his wife, and Letitia S. Buford executed a deed conveying the tract of land, one-half of which is here in controversy, to Leroy C. Thrasher, husband of Lucy J. Thrasher, in consideration of five thousand and five hundred dollars, one thousand dollars of which the grantee was allowed to retain for the benefit of his wife. He paid the residue of the purchase money to the grantors, except one thousand and three hundreed dollars, for which latter sum the land was afterwards decreed to be sold, and was purchased by the parties under whom the defendants claim; the balance of the purchase money being received from such sale, and paid to the original grantors. Matilda Stoner died after Letitia S. Buford, leaving a will executed by her in the year 1882, before the death of Letitia S. Buford, by which she devised the whole of said land to Lucy C. Thrasher. She instituted an ejectment suit against the purchasers of said land for the possession thereof, and this Court held that the will of Matilda Stoner was void, upon the supposition that Mrs. Buford was alive at the time of the death of her mother, and that, the appointment, not having been legally executed, the land descended one-half to Mrs. Thrasher and one-half to Mrs. Buford, and adjudged the one-half of the land then in controversy to Mrs. Thrasher.

The plaintiff herein seeks to recover the other half of said land, as having descended to Mrs. Buford, or, as she was dead at the date of the death of Mrs. Stoner, to her heirs, of whom the plaintiff is the sole representative. The defendants, claiming title under the decree of the court aforementioned, and under Mrs. Thrasher, insist that the power of appointment vested in Mrs. Stoner was properly excuted, and that the plaintiff has no interest in the land claimed. Mrs. Thrasher's deposition was taken, and she testified on cross-examination by the plaintiff that Mrs.

Buford and her children received between "$3,000 and $4,000 of the proceeds of the sale of the land" made to her husband by the Stoners and Letitia Buford; that the money was collected from such sale by her father, from her husband, and invested in land in Wythe County, Va., for the benefit of the two children of Mrs. Buford. H. D. C. Buford, one of the children of Mrs. Buford, and who made a deed to the plaintiff for his interest in this controversy, with covenants of general warranty, and who is thereby interested in the result of this suit, in his testimony undertook to contradict Mrs. Thrasher as to this evidence brought out on cross-examination. He is incompetent to testify as to any transactions or communications had with the parties deceased, under whom defendants claim title, and otherwise as to such transactions his evidence is mere hearsay.

The first matter of inquiry that suggests itself is as to the effect of the deed of Daniel Stoner, Matilda Stoner, and Letitia S. Buford to L. C. Thrasher. Daniel Stoner was the trustee holding the legal title to the property in controversy. Besides, he was entitled to an interest by way of apppointment; and under the trust, if so directed by Matilda Stoner, their daughters being of age and married, he had the right to convey the property to either of them. Under such circumstances, the trustee and the beneficiaries, with the exception of Mrs. Thrasher, unite in changing the character of the trust estate from realty into a personal fund of five thousand five hundred dollars, one thousand dollars whereof is donated to Mrs. Thrasher, while the remaining four thousand five hundred dollars goes into the hands of the trustee and beneficiary grantee, Mrs. Stoner, who together have the full power of disposal thereof to one or both of these adult married daughters. Where trustees convert a trust property, the adult *cestui que* trust has a right to confirm the conversion, and accept the fund in its converted form, or repudiate it and take the original property. But he cannot do both. He must make an election. And his acceptance of the property in a converted form estops him from afterwards demanding the original property. While the deed might be void as a conveyance, it is an evidential fact showing her acquiesence in the transformation of the trust property, which,

taken in connection with the evidence that she received a greater benefit from the transformed property than she was entitled to in the original, estops those claiming under her from a recovery of the original property. In other words, during her adult age and marriage, the trustee, by direction of Mrs. Stoner, in whom was lodged the power by the terms of the trust, instead of giving Mrs. Buford the land, or a part thereof, as he was authorized to do by the instrument creating the trust, with her written assent and approval, sold the trust property, and invested for her benefit the proceeds thereof. Now, having gotten these proceeds, her children, on pure legal technicalities, want also the original property. They insist, because this Court, in the case of *Thrasher* v. *Ballard*, above, held, as the facts were then presented, the will of Mrs. Stoner invalid to pass the title to the property, and that it descended to Mrs. Thrasher and Mrs. Buford in moieties, that this determination is *res adjudicata*. In that case the Court only held that Mrs. Thrasher was not entitled to the Buford moiety, but did not undertake to determine Mrs. Buford's rights. She was dead, and her heirs were not parties to the suit; and it was not a binding adjudication as to them, and therefore could not be as to the defendants, who in part claim through her deed.

The validity of her deed, however, is questioned. It is shown in evidence that her husband deserted her in 1859, and never lived with her afterwards. At the time of the the execution of the deed she was living in Wythe County, Va., while he lived in Missouri, where he remarried,—whether with or without a divorce is not known, although the witness did not know of a divorce. Mrs. Buford, learning of his remarriage, also remarried. "At the common-law, if the husband had abjured the realm, or was an alien residing continuously abroad, these circumstances invested the wife with the protection and powers incident to a *feme sole.*" And the same rule has been extended and applied when the husband resided without the state of the wife's residence, he having deserted her. *Abbot* v. *Bayley*, 6 Pick. 89; *Gregory* v. *Pierce*, 4 Metc. (Mass.) 478; *Rose* v. *Bates*, 12 Mo. 30; *Gallaher* v. *Delargy*, 57 Mo. 29; *Rhea* v. *Rhenner*, 1 Pet. 105; *Gregory* v. *Paul*, 15 Mass. 31; *Cornwall* v. *Hoyt*, 7 Conn. 427; *Arthur* v.

*Broadnax*, 3 Ala. 557; *Roland* v. *Logan*, 18 Ala. 307.   In *Starrett* v. *Wynn*, 17 Serg. & R. 130, the rule of the common-law is stated to be that "if a husband deserts his wife, and ceases to perform his marital duties, the acquisitions of property made by the wife during such desertion are separate property, and that she may dispose of such property by will or otherwise."   See, also, *Love* v. *Moynehan*, 16 Ill. 277.   It being simply just to the wife that, her husband having deserted her, and gone beyond the limits of the state, with no intention of returning, she, being thus deprived of her marital rights, should be allowed to manage and dispose of her property as though she were a *feme sole*; otherwise her property would be indefinitely tied up, without benefit to herself or others.   In some states, because the statute so provides, a married woman separated from her husband cannot make a good deed for her real estate, for the reason that her husband does not join with her.   *Beckman* v. *Stanley*, 8 Nev. 257; *Maclay* v. *Love*, 25 Cal. 367; *Leonard* v. *Townsend*, 26 Cal. 446.   The common-law, however, was in full force in this state at the time of Mrs. Buford's conveyance, and the statute law in no wise affected it, except to provide the effect of a married woman's deed when properly acknowledged; and, when the so-called "Married Woman's Law" was adopted into the Code of 1868, special provision was made therein for the conveyance of a wife's property when living separate and apart from her husband.   Mrs. Buford executed the deed as though she were a *feme sole*.   Her only interest affected thereby was a remote, contingent right, which could be released or conveyed by deed, under section 5, chapter 116, Code Va.   And, whether sufficient as a conveyance or not, it would operate as an estoppel in favor of a purchaser in good faith, fully complying with the terms of purchase.   If good enough to give her the benefit of the purchase money without restitution, it should be regarded as good enough to bar her heirs from questioning the legality of the appointment afterwards made by Mrs. Stoner, who undoubtedly made it believing at the time that Mrs. Buford had already received full consideration for, and parted with, all her interest in such appointment. In the case of *Rosenthal* v. *Mayhugh*, 33 Ohio St. 155, it was held that a deed made by a deserted wife and her

children, in the absence of the husband, for his property, was sufficient to bar the wife's dower in said property, which was afterwards recovered by the returned husband, and of which he died seised. And in the case of *Hart* v. *Gregg*, 32 Ohio St. 502, it was held that a general warranty deed made by an heir apparent for his expectancy, while void as a conveyance, as being for a mere possibility not coupled with an interest, would act as an estoppel in favor of a purchaser for value in possession. Being binding as to Mrs. Buford, it would be binding as to her heirs, as though it were an advancement made. *Coffman* v. *Coffman*, 41 W. Va. 8 (23 S. E. 523).

But the plaintiff does not claim as an heir of Mrs. Buford, but as heir of Matilda Stoner, insisting that Mrs. Buford died before Mrs. Stoner, and yet he pleads the decision in the case of *Thrasher* v. *Ballard* as *res adjudicata.* That decision was reached at the instance of those claiming under Mrs. Buford, on the theory that she was alive at the date of the death of Mrs. Stoner, and that for this reason alone she was equally interested in the appointment. The plaintiff now insists that the adjudication of the court is *res adjudicata,* but not as to the facts on which it is founded, and that he is entitled to the benefit thereof, but has a right to show that the main fact on which it is predicted was untrue, and that for this reason he is entitled to the controverted property by virtue of the adjudication, yet in opposition to such fact. In other words, he has the right to assert that Mrs. Buford was dead at the time of an adjudication in her favor, and that the determination was void as to her, but operated in favor of plaintiff's title derived from another source, and that, while defendants are estopped by the adjudication, plaintiff is not, only in so far as it suits him. The plaintiff, in relying on this estoppel, is also estopped from asserting any facts to the contrary of that on which it is founded. He is thus estopped from denying that Mrs. Buford was alive at the death of Mrs. Stoner. Hence, if he relies on the death of Mrs. Buford before Mrs. Stoner, he cannot rely on the adjudication made on a contrary showing as *res adjudicata.* This, then, would leave the question open, as between the parties to this suit, as to whether the will of Mrs. Stoner is void. The former adverse decision

was based on the apparent facts which are now made to appear plainly and admittedly to the contrary: (1) Mrs. Stoner's death before Mrs. Buford's; (2) Mrs. Buford's residence with her husband at the time she joined in the deed to L. C. Thrasher; (3) that she had received no portion of the property in the trust; (4) that the appointment was made without her knowledge or consent. If Mrs. Buford was aware of the appointment, and assented thereto, and received her just portion of the property, it does not matter when the appointment is held to have been consummated,—whether at the date of the will, or at the death of Mrs. Stoner, although the latter must be conceded to be the proper legal time. It is plain to be seen that, when Mr. and Mrs. Stoner and Mrs. Buford joined in the deed to L. C. Thrasher, their object was to carry out that portion of the trust which provided, "If any of the children of the said Daniel and Matilda, or any which they may hereafter have, shall marry or arrive at age, that the said William Nossinger shall give to such child or children such part of the property aforesaid as the said Matilda shall direct."

The property was more than she wanted to give to either or both the children. That they might give a portion to each, they sold it for a fair consideration to L. C. Thrasher, husband of Mrs. Thrasher, and permitted him to retain one thousand dollars as the portion of his wife, and out of the residue of the purchase money provided Mrs. Buford a portion. But, Thrasher failing, the land was sold to pay the unpaid balance of the purchase money, and thus Mrs. Thrasher was deprived of her portion; and she not having joined in the deed, and not being bound thereby in any way shown in the record, Mrs. Stoner executed the appointment by will, thus securing to her such rights as she might have in the land by reason of not uniting in and being bound by the deed, which afterwards, owing to the peculiar phase the facts assumed, was adjudicated to be a one-half undivided interest by inheritance. From these circumstances it is clear that Mrs. Buford, having received her portion, was aware of and assented to the appointment made by Mrs. Stoner; and this is made plainer from the appearance of the names of H. D. C. Buford and N. W. Buford as witnesses to Mrs. Stoner's will, who are now

claiming the land in this suit as the sons of Mrs. Buford, and the heirs of Mrs. Stoner. Mrs. Buford was not a forgotten child, and hence she could not complain of this appointment made to Mrs. Thrasher as invalid if she were living. Much less can her sons, since their mother died before it became effective. The judgment is therfore affirmed.

*Affirmed.*