ROBERT H. GARDINER *versus* JOSEPH M. GERRISH & al.

The power over mortgages, given by statute to the Supreme Judicial Court, extends only to cases of foreclosure and redemption.

If land be conveyed, and at the same time mortgaged back, each conveyance being with covenants of warranty, and the mortgage be assigned; and after the assignment, the mortgagor acquires a title to the same premises under a sale for taxes, assessed upon the land prior to such conveyances, the tax title enures instantly to the benefit of the assignee of the mortgage; and the remedy of the mortgagor is on his grantor.

But if one afterwards merely contracts to purchase a portion of the mortgaged premises of one of the several mortgagors, it does not prevent him from acquiring a title under the tax sale, and holding it for his own benefit.

The principle is well known in equity jurisprudence, that equity, regards what is contracted to be done, as done; but it means no more, than that a party to a contract, or his legal representatives, may insist upon being placed in a situation equally as advantageous as if the contract had been fulfilled.

To obtain relief in a court of equity, fraud must be clearly and distinctly made out. It cannot be inferred from circumstances of an equivocal tendency; or from a deficiency of mere neighborly kindness.

THIS was a bill in equity against Joseph M. Gerrish and William E. Edwards, and was heard on bill, answer and proof. The facts are sufficiently stated in the opinion of the Court.

*F. Allen,* for the plaintiff, contended that the Court had jurisdiction on either of the grounds, of its relating to a mortgage, of trust, fraud, or accident and mistake.

The defendants hold under the tax title in trust for the plaintiff as assignee of the mortgagee. The defendants are bound to pay the taxes upon the land, imposed before the conveyance to them as well as afterwards. They purchased as mortgagors and not as strangers. They were bound to redeem as mortgagors, and had no right to do so as strangers. The mortgagors and their assignees are to be considered but as tenants of the mortgagee, and are bound to pay the taxes, and are not permitted thus to acquire a title, and set it up against one standing in the relation of landlord.

It is a fraud upon the rights of the mortgagee for one who ought to pay the taxes, to suffer the land to be sold for their

payment, and to set up a title acquired thereby to defeat the title of the mortgagee. If tenants in common purchase in a tax title they cannot set it up against a co-tenant, but hold it in trust for all. The Court has jurisdiction of implied trusts.

The mortgagors conveyed by deed of warranty, and therefore any title acquired by them afterwards enures to the benefit of the mortgagee. And any one coming in under the grantors is estopped equally with them.

By praying that the money may be paid to us, we open the right to redeem, and the mortgage remains.

The defendants are not at liberty to object to the jurisdiction after having put in full answers, and taken evidence. The following cases were cited in support of the various grounds of argument. 2 Barbour & H. Dig. 122; 3 Greenl. 207; 22 Pick. 231; 3 Sumn. 475; 5 Greenl. 420; 2 Mason, 533; 22 Pick. 55; 13 Pick. 116; 17 Pick. 14; 3 Pick. 52; 4 Cranch, 403; 14 Peters, 156.

*C. S. & E. H. Daveis* and *Barnes* argued for the defendants. They insisted, that as the mortgagee conveyed the same title that was mortgaged back at the same time, that he was bound to pay all taxes before the conveyance ; and that the plaintiff stands in no better condition than the mortgagee. It was their neglect, and not ours, which caused the sale for taxes. We therefore are at liberty to avail ourselves of title by public sale equally with others. The tax title was acquired by us by purchase and not as a redemption.

The defences of Gerrish and Edwards are distinct. Gerrish had no interest in the equity of redemption until more than a year after he had become the assignee of the purchaser under the tax sale ; and then he merely took a naked release of the share of John Edwards. He was therefore but as a stranger to the mortgagee and his assignee.

No moral fraud is pretended, and there is no ground for saying there is legal fraud. If the bill can in any way be supported, it must be on the ground of trust. But there can be no trust, where there is no obligation to pay the tax. W. E. and John Edwards had paid their full share of the pur-

chase money, and the plaintiff is by this bill attempting to compel the defendants to pay the shares of others. If the plaintiff seeks equity, he should do equity. If the defendants are not allowed to hold the whole under the tax title, they should be allowed to hold their proportion of the land, free of the mortgage.

The *onus probandi* of a trust is on the party alleging it. 6 Wheat. 481. As to what a trust is, 2 Story's Eq. § 890, 1195, 1268. At law a title purchased in, would enure to the benefit of the grantee. But the rule does not apply here. They are the grantors of Edwards, as much as Edwards to them. And there is this broad distinction, that the taxes were imposed before the conveyance, and it was their duty to pay them, and not ours.

The opinion of the Court was drawn up by

WHITMAN C. J. — This is a bill in equity. Under the limited powers of this Court, in matters of equity, it becomes necessary, in the first place, that we should ascertain, that the case presented comes within the limitation. The application is on the part of a mortgagee; but not for a foreclosure. The power conferred over mortgages is only in cases of foreclosure and redemption. We have, therefore, not cognizance of the matter of the bill under that head. It is, however, urged, that the case presented involves a case of trust or fraud or both; and so that we have jurisdiction of the subject matter of it.

The bill sets forth, that the plaintiff is assignee of a mortgage of a tract of timber land, and that the defendants are the mortgagors, or assignees of the mortgagors of the same, and that they have purchased in an outstanding tax title to the premises mortgaged, and hold the same in trust for the plaintiff, as assignee of the mortgagee, or with a design to defraud him.

From the bill, answers and proof it appears, that, on the twenty-eighth day of March, 1835, Robert H. Gardiner, Jr. conveyed to the defendant, William E. Edwards, and one John Edwards, the undivided third part of several parcels of

timber land; and to Joseph Poor and Albert Alden, the other two third parts of the same parcels, to hold in like manner. At the same time the grantees all joined in conveying the same premises to their said grantor in mortgage, as collateral security for the payment of the consideration for the purchase; notes of hand having been made therefor, viz. by Messrs. Wm. E. and John Edwards for one third part thereof, and by the other mortgagors for one third part by each severally. The notes, so given by Wm. E. and John Edwards, have been wholly paid, as has also a considerable portion of those made by Messrs. Poor and Alden. On the sixth of October, 1840, Robert H. Gardiner, Jr. the mortgagee, transferred and assigned such of the said notes, as then remained unpaid, with the mortgage and mortgaged premises to the plaintiff. On the second day of June, 1835, the said Alden conveyed his one third part of the premises, the one half to said Poor, and the other to Messrs. Wm. E. and John Edwards, whereupon Messrs. Wm. E. and John Edwards became seized, subject to said mortgage, of one quarter part each of the same. On the twenty-third day of June, 1835, the defendant, Gerrish, entered into a contract with said John Edwards for the purchase of him of his right to one sixth part of the premises; and in consideration thereof to pay and take up the notes given by him therefor. On the twenty-third day of March, 1835, by an act of the legislature, a tax of two dollars and three cents was imposed upon the township, in which the premises were situate; and on the thirty-first day of August, 1836, the south half of the same township was sold, according to law, to pay said tax and charges thereon, amounting to five dollars and ninety-five cents, to William Allen, Jr. who, afterwards, on the sixteenth day of August, 1837, for the consideration of eleven dollars, transferred, to the defendants, his right and title so acquired. On the twentieth day of March, 1835, a county tax of two dollars and thirty-four cents was duly authorized and assessed on said township; and on the thirtieth day of August, 1836, the north half of said township was sold, according to law, for the payment of the same tax, and charges

thereon, being in the whole, five dollars and ninety-five cents, to said Allen; who, thereafterwards, on the said sixteenth day of August, 1837, for the consideration of ten dollars, conveyed to the defendants all his right and title, so acquired, to the north half of said township. The right of redeeming said township from said sales has long since expired; so that, by virtue of said purchases of said Allen, the defendants, in their several answers, contend, that they have acquired an indefeasible estate in the premises; the said defendant, Edwards, so contending, because, as he alleges, the said taxes were imposed, and became a charge upon the land before he bought of the plaintiff's assignor; and the said Gerrish, because he had no connexion with that purchase. The defendants, although joined in the bill, have answered severally, each for himself, denying that they made the purchase, under the tax title, in trust either for the plaintiff, or his assignor, or that there was any fraudulent act or intent, in reference thereto, on the part of either of them.

As the defence relied upon on the part of each of the defendants must be regarded, in its principles and circumstances, as different from that of the other, it becomes necessary to examine their cases separately. The defendant, Edwards, was one of the original mortgagors to the plaintiff's assignor. He is therefore in the condition of a grantor of the premises to the plaintiff, inasmuch as his deed contains covenants of general warranty. No rule is believed to be better settled than that a vendor of real estate in fee, with covenants of general warranty, cannot acquire an outstanding title, and set it up adversely to his conveyance. In making such an acquisition, therefore, no injury was done to the rights of the plaintiff. On the contrary, whatever of title the defendant, Edwards, acquired by his purchase of the tax title, was confirmatory of that of the plaintiff, and enured instantly to his benefit. By such a purchase of an outstanding title, this defendant, in effect, acquired no title in himself. He was, to every intent and purpose, merely a conduit, through which it resulted to the perfection of that of his grantee or his assignee, the plaintiff;

excepting, however, in so far as this defendant had a right in equity of redemption.

This defendant, therefore, is not the holder in trust of any estate under the tax title, which would authorize the maintenance of this bill against him. The plaintiff's title is not clogged or incumbered, or in danger of being defeated by it. And much less reason is there for considering him, in the slightest degree, as defrauded by this defendant, by the purchasing in, or rather, as it respects the interest of the plaintiff, by the extinguishment of the outstanding tax title. It may be true, and probably is, that this defendant may have a right of action against his warrantor to recover the amount paid by him to extinguish the incumbrance; but that in nowise concerns the plaintiff. The bill, therefore, as to the defendant, Edwards, must be dismissed; but without costs for him, as he has manifestly been attempting to set up his purchase of the outstanding tax title, unjustly, as paramount to that, which he had contributed to make to the plaintiff's assignor.

In regard to the defendant, Gerrish, it is urged, that, before he purchased the tax title, he had a contract with John Edwards, one of the mortgagors, for the purchase of one sixth of the mortgaged premises, and that, having such contract, he became the equitable assignee of that one sixth; and that equity regards what is contracted to be done, as done. This maxim is, to be sure, well known in equity jurisprudence; but it has, undoubtedly, a limited extent of application. If it had not, nothing further than an executory contract for the conveyance of real estate, would be requisite to transfer it. This principle is applied in furtherance of the objects of equity. It means no more, than that the party to a contract, or his legal representatives, may insist upon being placed in a situation equally as advantageous as if the contract had been fulfilled. It is what may be insisted upon or waived at the pleasure of the parties to a contract. It is very clear, that a levy upon land, contracted for by a debtor, could not be made available to a creditor, either at common law, or in equity.

What reliance Gerrish placed upon his contract with John Edwards does not distinctly appear. Before he took a release of him, in May, 1838, of his interest in the premises, he had acquired the tax title. Whether essential or not, he might think it could do no harm to take a release from John Edwards. Releases are obtained from various motives. Whenever one man finds another setting up a claim to his land, however unfounded it may be, to avoid contention or litigation, a release from him may become desirable ; and the release would not, thereby, be considered as acknowledging the title of the releasor, nor would it have the effect to render him responsible for any covenant obligatory upon the releasor. *Fox & al.* v. *Widgery*, 4 Greenl. 214.

Gerrish could not be considered as doing a wrongful act in not paying taxes assessed on lands, in which he had no interest at the time of the assessment; nor in suffering them to be sold therefor ; nor in purchasing them of the vendee. His contract with John Edwards did not bind him to do any thing of the kind. He might prefer that mode of obtaining a title to a moiety of all the parcels, instead of to one sixth under the contract with John Edwards. Under that contract he had acquired no seizin, even in the one sixth. He was in nowise a tenant under the mortgagee. Having no title before he acquired one under the sale for taxes, he had no right to redeem from the sale therefor; and, having no such right, it cannot be inferred that he purchased that title for the benefit of the mortgagee, or by way of redemption. He was then as a stranger to the title of the plaintiff, and of his assignor ; and not under the slightest obligation in law to regard it. The release, which he subsequently took from John Edwards, may well have been accepted from abundant caution, and cannot have the effect to disturb the title before acquired.

It was urged that the relation of landlord and tenant existed between the mortgagee and Gerrish ; but we see no ground upon which any such position can be sustained. Gerrish did not become such tenant by his contract with John Edwards ; and surely not by his purchase of the tax title. Under that

title he was in, as of his own estate, acknowledging no superior, subject, however, for a time, to be defeated by a redemption.

Gerrish having thus seen fit to become, conjointly with William E. Edwards, the purchaser of the township, including the premises in question, he, thereupon, became seized of a moiety of the township, in common and undivided; and of course in a moiety of the premises in question, in like manner. He was not the grantor of the mortgaged estate; nor in any-wise affected by the covenants contained in the deed of mortgage; but was wholly independent of any connexion therewith. What he purchased, therefore, he acquired as a stranger to that title. Can he then be considered as having purchased in trust for the plaintiff as urged by his counsel? Nothing in the nature of a fiduciary character can be considered as arising from that purchase. Gerrish has never made any declaration of his holding it in trust for the plaintiff; and implied trusts are to be made out by indubitable evidence; for which we look in vain in this case. Gerrish acquired the legal estate to one half of the premises. He was under no obligation to acquire it for any one but himself; and he peremtorily denies having so done for any one else. There is then no ground upon which we can hold him to be a trustee, of any portion of the premises, for the plaintiff.

But it is contended, that the purchase by Gerrish, was a fraudulent act to the injury of the plaintiff; unless the purchase was in trust for him or his assignor. And how so? There was an outstanding incumbrance upon the estate, whether existing before the plaintiff's assignor sold to Edwards and others, or not, does not seem to be material, so far as Gerrish is concerned. He purchased it, and it has ripened into a title. It was a matter of notoriety, as it arose under acts of the legislature, expressly authorizing the taxation. If it occurred before the plaintiff's assignor sold to Edwards and others, he was bound to have noticed it, and to have paid the taxes. If afterwards, it could make no difference, so far as Gerrish was concerned. Gerrish found the land had been assessed, and

sold for taxes.  He was not bound to redeem it; and might purchase it, as might any one else.  He was guilty of no act tending to conceal his purchase from the plaintiff, or his assignor.  He duly registered his deed.  It was always in the power of the plaintiff, or of his assignor, to have traced out the proceedings; and to have paid the taxes; or to have redeemed the lands, after they were sold.  Gerrish could not know that the one or the other would not be done.

But it is urged, that the sum he paid for his purchase was trifling, and that it is unconscionable for him to resist the claim of the plaintiff, and, therefore, fraudulent.  This would be carrying the doctrine of fraud beyond what the policy of law ever contemplated.  Sales for taxes have been and are continually taking place by authority of law.  After the expiration of the time for redemption, none having taken place, they are regarded as making perfect titles.  These sales are, almost without exception, for an amount equally as trifling, as the one in this instance; yet it was never imagined to be fraudulent for the purchaser to insist upon the right, which the law gave him.

Again it is urged, that Gerrish must have known, that, if the plaintiff or his assignor had been apprised of these sales for taxes, he would have redeemed the lands from the purchaser of them; and that Gerrish was bound in conscience to have apprised him of their situation, in time to have afforded an opportunity to prevent the title from becoming absolute in the purchaser.  But we do not see that Gerrish was under any obligation to have given himself that trouble.  He was not bound to know that the plaintiff, or his assignor, had not such notice.  In the case of sales for taxes of the uncultivated, or other lands, it is not made the duty of the purchasers to seek out and notify the proprietors of their danger.  They are expected to be vigilant and attentive to their own interests.  They know their lands are liable to taxation; and must be supposed to know, that they will be liable to be sold for taxes and lost, unless they are watchful to prevent it.  They must be presumed to know the maxim, that the law aids those, who are

vigilant; and leaves those, who are negligent, to the consequences of their inattention. Gerrish had a right to remain passive. No one could insist upon his doing otherwise. He was bound not to be guilty of any concealment of his purchase, or of any act that could mislead or deceive the plaintiff, or his assignor, and there is no evidence that he did either. Fraud must be clearly and distinctly made out. It cannot be inferred from circumstances of an equivocal tendency; or from a deficiency of mere neighborly kindness. Gerrish doubtless knew, that the plaintiff's assignor held a mortgage of the premises; and it might have been an act of friendship and kindness, on the part of Gerrish, to have admonished him of his danger from the claim held by Gerrish. But this was, at most, but an imperfect obligation, which the law does not enforce. The bill, therefore, as to Gerrish also, must be dismissed, and he must be allowed his costs.