J. H. MURRAY v. JOHN A. NEWSOM, *as Liquidator.*

149 So. 387.

Division A.

Opinion Filed June 27, 1933.

C. N. Smith, for Appellant;

*Jackson, Dupree & Cone,* for Appellee.

ELLIS, J.—It was stipulated in writing between solicitors for the complainant, John A. Newsom, as Liquidator of the Citizens Bank & Trust Company, and solicitor for J. H. Murray, defendant, that the "affirmative allegations of fact set forth in the reamended bill of complaint, the answer thereto, the cross-complaint and the answer of John A. Newsom thereto, shall be taken as true and that it shall be unnecessary to take testimony in support thereof," etc.

There was another stipulation in which it was agreed between the solicitors for the respective parties that the subject matter of the suit (the land mortgaged) was "orig-

inally" owned by Gray and his wife; the title was conveyed by warranty deed from Isaac Hanan and his wife, dated June 3, 1925, and recorded on the 10th day of July, 1925, and that after the foreclosure of a mortgage given by Gray and wife to M. P. Mickler the premises were reconveyed by Mickler and wife to Gray and wife by deed dated May 30th, 1927, and recorded on May 31st, 1927.

Now the pleadings show that Mickler became the purchaser of the land at the foreclosure sale; that fact is also agreed to in the second stipulation. The pleadings also show that on October 1st, 1925, Gray and wife mortgaged the property to Isaac Hanan to secure the payment of a debt of five thousand dollars evidenced by a promissory note due one year after date payable to the order of Isaac Hanan who in May, 1926, transferred and assigned the mortgage to Citizens Bank and Trust Company, Trustee, which in June, 1928, assigned the mortgage to Chicago, Tampa Development Company, a corporation, which in August, 1930, assigned the mortgage to J. H. Murray, who also purchased the note in "good faith for a valuable consideration."

On October 12th, 1925, Grey and wife mortgaged the property to M. P. Mickler to secure an indebtedness to him. That mortgage was recorded October 17th, 1925. The Hanan mortgage was not recorded until December 25th, 1925, more than two months after the recording of the Mickler mortgage.

Mickler brought a bill to foreclose his mortgage and obtained a final decree on April 2nd, 1927. The amount adjudged to be due to him was seven thousand one hundred dollars and he became the purchaser of the land and obtained a deed from the Master conveying this title to him. The Chancellor confirmed the sale. The Citizens Bank & Trust Company, Trustee, the owner of the Hanan mortgage,

was made a party defendant in the Mickler foreclosure proceedings in which the bank and all persons claiming by, through or under it were "barred of all their right, title or interest" in and to the premises described. The attempted assignment by the bank to the Chicago-Tampa Development Company of the Hanan mortgage and the attempted assignment by that company of the mortgage to J. H. Murray occurred long after the conclusion of the proceedings in the Mickler foreclosure suit. The assignment by the bank to the Chicago-Tampa Development Company occurred in June, 1928, and the assignment by that company to J. H. Murray occurred in August, 1930.

Now then on May 30th, 1927, Mickler conveyed the land to the Greys. The Citizens Bank & Trust Company loaned to the Greys seven thousand two hundred dollars and fifty-one cents to pay Mickler the purchase price for the property. The Greys on that date executed to the bank a mortgage upon the property to secure an indebtedness not to exceed ten thousand dollars, of which the amount advanced to pay Mickler the price of the land constituted a part.

The Citizens Bank & Trust Company became insolvent and John A. Newsom, as Liquidator, in December, 1930, exhibited his bill in chancery to enforce the mortgage executed by the Greys to the bank in May, 1927. The Greys and Chicago-Tampa Development Company were made parties. J. H. Murray appeared and answered in June, 1931, and on July 1st amended his answer and on the same day filed a cross bill seeking the enforcement of the Grey mortgage to Isaac Hanan which was executed in October, 1925, and which he had assigned to the Citizens Bank & Trust Company in May, 1926, and by that bank assigned to the Chicago-Tampa Development Company in January, 1928, and by that corporation transferred and assigned to

J. H. Murray on August 19th, 1930. Newsom, as Liquidator, filed his reamended bill in August, 1931, and J. H. Murray answered in October, 1931.

The above statement of facts is made up from the pleadings as agreed to by the parties in the stipulations mentioned.

It is contended by Murray that the lien of the Grey mortgage to Isaac Hanan was not extinguished by the foreclosure proceedings begun by Mickler in 1927, at which time it was owned by the Citizens Bank & Trust Company, Trustee; which was made a party defendant in the suit as above stated. The theory upon which the contention is based is that when the Greys reacquired the title to the land from Mickler in May, 1927, it inured to the benefit of the holder of the Hanan mortgage executed in October, 1925, which was extinguished in the Mickler foreclosure proceedings and was afterwards attempted to be acquired by Murray in August, 1930.

The Chancellor decided against that contention and decreed a foreclosure and sale of the property to satisfy the debt secured by the Grey mortgage to the Citizens Bank & Trust Company in May, 1927. From that decree J. H. Murray appealed. There was no error in the decree.

The doctrine that an after acquired title inures to the benefit of a former mortgagee does not apply. When the Greys reacquired the title from Mickler in 1927 the lien of both the Hanan and Mickler mortgages had been extinguished by the foreclosure proceedings under which Mickler acquired the title. Of that condition of the record title Murray was fully advised by the record in August, 1930, when he attempted to acquire the Hanan mortgage.

The Hanan mortgage contained covenants of seizin and warranty and the Grey's title at that time was complete.

Early text writers laid down the doctrine that "if any

interest, however small, passes by a deed, it creates no estoppel." See 4 Kent's Com. 98.

In Bigelow on Estoppel, 5th Ed. 391, it is stated that the doctrine announced by the earlier text writers, especially the English writers, intended to limit the doctrine to leases. In the common conveyance with covenants of warranty the estoppel applies against the grantor in respect to after-acquired interests as well where the grantor had an estate at the time of the grant as where he had none. Bigelow on Estoppel, *supra;* House v. McCormick, 57 N. Y. 310; Tupy v. Kocourek, 66 Ark. 433, 51 S. W. Rep. 69; Buchanan v. Harrington, 141 N. C. 39, 53 S. E. Rep. 478; Gardiner v. Gerrish, 23 Me. 46; Clark v. Sayers & Lambert, 55 W. Va. 512, 47 S. E. Rep. 312; Dye v. Thompson, 126 Mich 597, 85 N. W. Rep. 1113.

It has been held that where an existing mortgage is expressly excepted from a covenant against encumbrances yet the subsequent acquisition by the grantor of the title under the foreclosure of the mortgage will inure to the benefit of the grantee as such exception does not extend to or modify the general covenants. See Rooney v. Koenig, 80 Minn. 483, 83 N. W. Rep. 399; George v. Brandon, 214 Pa. 623, 64 Atl. Rep. 371.

Where however a deed with covenants of warranty describes the present interest conveyed as all the grantor's right, title, interest, estate and demands, the doctrine of estoppel does not apply. See Hanrick v. Patrick, 119 U. S. 156, 30 L. Ed. 396; Gee v. Moore, 14 Cal. 472; Holbrook v. Debo, 99 Ill. 372; Bell v. Twilight, 6 Foster (N. H.) 401.

No estoppel will arise where a deed which passes a present interest contains only a covenant against the acts of the grantor and those claiming under him. Partridge v. Patten, 33 Me. 483, 54 Am. Dec. 633; Gee v. Moore, *supra.*

The doctrine of the inurement to the grantee of an after-acquired title by his grantor rests on the principle of estoppel and the question is one of intention. Where it appears to have been the object of the covenant to assure to the grantee the full and absolute enjoyment of the property without any right of the *grantor* to divest or interfere with the possession at any time thereafter, the deed operates as an estoppel against the claim of the grantor to a subsequently acquired estate, whether a present right passes or not.

The principle was discussed by this Court in Cheeser and Cone v. Deprater, 20 Fla. 691.

The estoppel operates to prevent the grantor and his privies from setting up as against the grantee and those claiming under him a *preexisting* outstanding title subsequently acquired by the grantor or his privies. The rule also applies to a mortgage with warranty. See 10 R. C. L. 678.

The deed operates by way of estoppel and not by direct transfer of an interest which the grantor did not have at the time of the conveyance. In some cases where the rule is liberally applied it has been held that the warranty is not the real, at least not the exclusive, ground of the estoppel, but the principle is that the grantor should not be permitted to *impeach* and *nullify* his solemn deed and act by alleging his own fraud and inequity as by claiming and setting up a title against his grantee which could not have existed but for *his own fraudulent act* and *intent*. Even where there is no covenant of warranty the estoppel applies where the assertion of the subsequently acquired title would *contradict* the express or implied affirmation of the deed. See Hallyburton v. Slagel, 132 N. C. 947, 44 S. E. Rep. 655. "It depends on good faith, right, conscience, fair dealing, and

sound justice." See Lindsay v. Freeman, 83 Tex. 259, text 265, 18 S. W. Rep. 727; Bell v. Twilight, *supra.*

In the case at bar no element of the claim insisted upon by the appellant exists to sustain his contention. The title which the Greys acquired from Mickler was not an outstanding title in the sense that it was an interest which the Greys did not have when they executed the mortgage to Hanan. It was the same title which had been divested of the liens they had placed upon it. That divestiture had taken place by legal procedure in which the lien of the Hanan mortgage was in no wise disputed or repudiated by the Greys. The property which was subject to the lien by the Greys was sold under an order of court in a legal procedure to satisfy the lien of that mortgage as well as the lien of the Mickler mortgage. Mickler, as the purchaser of the land at foreclosure sale, acquired the Grey's title divested of the two liens. Acquiring the title from Mickler afterwards was no act of bad faith. It was not the setting up of an outstanding after-acquired title which was not affected by the mortgage. The Greys did not impeach or nullify their deed of mortgage. There was no element of fraud in the transaction nor did the title subsequently acquired by the Greys directly or impliedly contradict their solemn affirmations in their mortgage to Hanan.

We are of the opinion therefore that the decree of the Chancellor was correct and should be affirmed.

It is so ordered.

DAVIS, C. J., and WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.