WARREN, LAMAR, Associate Judge.
In this action the plaintiff asked that the title to certain property be quieted in him and that certain deeds be cancelled.
The subject property was the homestead of W. J. Sanborn, who passed away in 1941, and who was survived by his widow and his daughter by a former marriage, Marguerite Chesley, wife of John H. Chesley.
The plaintiff, Charles A. Cahill, acquired his claim of title by virtue of a deed executed by Mrs. Sanborn on January 12, 1957, which was recorded on December 30, 1959. The defendants, Harrison W. Ches-ley, son of Marguerite Chesley, and Phyllis J. Chesley, his wife, acquired their claim through inheritance, that is, when Sanborn died, Mrs. Sanborn became possessed of a life interest, and the daughter of a remainder interest; upon the death of each successively, the title vested in Mrs. Ches-ley’s husband, John Chesley, and after his death, title passed to his son, Harrison W. Chesley, who pursuant to divorce proceedings, conveyed to the defendant, Phyllis J. Chesley.
For the purposes of this appeal it is necessary to state that in 1937, the Sanborns mailed a deed of said property, dated September 10, 1937, to Harrison W. Chesley, however, no consideration was given for the deed. And in 1941, after Sanborn’s death, his widow sought and obtained a deed, dated September 3, 1941, from Ches-ley and his wife, the defendants, conveying the property back to her; there was no consideration for this deed. Both of these instruments were recorded on March 3, 1943. On March 2, 1943, the widow conveyed the property to Marguerite and John Ches-ley, reserving a life interest in herself, the deed being recorded November 7, 1957.
It will be noted that the deed to the Ches-leys was executed prior to that under which the plaintiff claimed, but that the deed to the plaintiff was executed prior to the recordation of that given to the Chesleys.
*820 In its final decree, the lower court found that the property “was the homestead of W. J. Sanborn on September 10, 1937, and at the time of his death on July 18, 1941; that Mary Agnes Sanborn, the widow of W. J. Sanborn, was never possessed of more than a life estate in said property and that upon the death of • W. J. Sanborn, his daughter, Marguerite Chesley, became possessed of a vested remainder interest therein, subject only to the life estate of Mary Agnes Sanborn; that the conveyance of the said property on September 10, 1937 to Harrison Webster Chesley, without consideration and to the exclusion of the daughter, Marguerite Chesley, was invalid because the same was not in accordance with the provisions of the constitution of the State of Florida; that as a consequence thereof, the reconveyance of the property, without consideration, by Harrison Webster Chesley to Mary Agnes Sanborn, after the death of W. J. Sanborn was ineffectual and passed no title therein; that subsequent conveyances of the property by Mary Agnes San-born could not convey more than her life estate therein; that after the death of Mary Agnes Sanborn in September, 1957, the defendant, Harrison Webster Chesley became vested with the fee simple title to said property by inheritance through his mother, Marguerite Chesley, who died in July, 1957, and the subsequent death of his father, John W. Chesley.
“That, even if the principle of after-acquired title in Harrison Webster Chesley were to be applied, the Plaintiff did not pay a valuable consideration to Mary Agnes Sanborn for said property and, therefore, was not protected under Section 695.01 of the 1963 Florida Statutes [F.S.A.], and the deed from Mary Agnes Sanborn to Marguerite Chesley and John H. Chesley, her husband, dated March 2, 1943, and recorded November 7, 1957, would be valid and have priority over the conveyance of said property by Mary Agnes Sanborn to the Plaintiff on January 12, 1957, and recorded December 30, 1959.” Finding the equities with the defendants, the cause was dismissed.
Plaintiff’s first point on appeal is stated as whether or not the defendants are barred by F.S. § 95.16 or § 95.23, F.S.A., from now asserting their claim against the property. It is the plaintiffs position that his grantor, Mrs. Sanborn, was in possession of the property under color of title in excess of seven years after the deed to her by Chesley and his wife in 1941, and further, that it had been more than twenty years from the recordation in 1943 of the Ches-ley deed. As to § 95.23, he relies on Barnott v. Proctor, 128 Fla. 63, 174 So. 404, and Reed v. Fain, Fla., 145 So.2d 858. In the former, the children of Barnott brought an action against their mother and one Proctor, who was the purchaser at a master’s sale of a portion of homestead property. It appeared that Barnott and his wife executed a voluntary conveyance of the homestead to a third person, who without valuable consideration conveyed the same land to Mrs. Barnott. The court held that, “The statute operates to prevent the plaintiffs from claiming against the purported conveyance to the wife, the mother of the plaintiffs, after the lapse of the statutory period, the plaintiffs being sui juris and having had for many years constructive and actual knowledge of the deeds * Subsequently, the ruling in the Barnott case was cited as authority to dismiss a second amended complaint and, upon appeal, the dismissal was affirmed in Thompson v. Thompson, Fla., 70 So.2d 555.
In the Reed case, Reed (in whom the title was originally), joined by his wife, in 1930 conveyed his homestead to their son, who immediately reconveyed the property to his father and mother in order to create an estate by the entirety. Both conveyances were without consideration. In 1951, the parents again conveyed the property to their son, reserving to themselves a life estate with survivorship — however, it was later determined that Reed lacked the mental capacity to execute this document. *821 The father died in 19S4, and in 1955 the mother conveyed her “life estate” to her son. She died within a year. In 1957, the daughter of the Reeds, Vivian Reed Fain, filed suit to obtain cancellation of the deeds above mentioned. The defendants in their answer relied upon § 95.23, in view of the fact that the 1930 conveyance by the son to the parents had been of record without adverse claim for more than twenty years. The chancellor held that when the father died in 1954, he held the title as a homestead, and that it inured to his widow as a life estate and then to his two children as tenants in common, reaching this conclusion by holding that the 1930 transaction between the parents and their son was an ineffective attempt to alienate the homestead. Upon the decision being affirmed by the district court, the supreme court was requested to review the decision of the district court because of an alleged conflict with Barnott and Thompson, supra.
After a lengthy decision, the court on page 871 of 145 So.2d stated: “Summarizing, we hold that F.S. Section 9523, F.S.A., is not applicable in this case because, first, the critical deed is void, second, if not void ab initio, it was and is void as to Mrs. Fain’s ‘inchoate’ interest in the homestead which became ‘vested’ upon the death of her father; third, the Legislature did not intend F.S. Section 95.23, F.S.A., to be applicable to deeds or wills conveying or devising ‘homestead property’; fourth, F.S. Section 95.23, F.S.A., is unconstitutional if it be construed in such manner as to breathe life into an instrument made and executed in contravention of constiUitional inhibitions. We expressly recede from our decision in Thompson v. Thompson, Fla., 1954, 70 So.2d 555. We also repudiate any statement in our opinion in the later case of Moyer v. Clark, et al. Fla., 1954, 72 So.2d 905, which might be considered as a re-affirmance of our decision in Thompson.” Thus, the court also receded from the decision in Barnott, supra, as the decision in Thompson was grounded upon the holding in Barnott.
F.S. Section 95.16, F.S.A. likewise is without application. The property was the homestead of Sanborn. The deed given by him and his wife on September 10, 1937 was ineffectual, and upon his death in 1941, Mrs. Sanborn became possessed only of a life estate and his daughter, Marguerite Chesley, of a vested remainder interest.
Plaintiff’s next point is whether or not the concept of after-acquired title is applicable to the defendants’ deed to Mrs. Sanborn which was dated September 3, 1941.
The defendant, Harrison W. Chesley, testified that in 1937 he received a deed to the homeplace through the mail while he was in Connecticut, for which he did not pay any consideration; that his grandfather wanted him to have it. Later, in 1941, after San-born’s death, a deed was sent to him and his wife to be executed, which was to Mrs. Sanborn, with the explanation that, “Grandmother wanted to get homestead exemption on the house.” He mailed the deed to her; he was not paid anything for the deed. From what his grandmother wrote him, he thought “it had something to do with homestead exemption — she felt if the property was in her name, she could have homestead exemption.”
In Murray v. Newsom, 111 Fla. 193, 149 So. 387, it is stated, “The doctrine of the inurement to the grantee of an after-acquired title by his grantor rests on the principle of estoppel and the question is one of intention. Where it appears to have been the object of the covenant to assure to the grantee the full and absolute enjoyment of the property without any right of the grantor to divest or interfere with the possession at any time thereafter, the deed operates as an estoppel against the claim of the grantor to a subsequently acquired estate, whether a present right passes or not.” Further, that “In some cases where the rule is liberally applied it has been held that * * * the principle is that the grantor should not be permitted to impeach and nullify his solemn deed and *822 act by alleging his own fraud and inequity as by claiming and setting up a title against his grantee which could not have existed but for his own fraudulent act and intent.” See 10 Fla.Jur.Deeds § 164, where there is also the statement that, “Generally, a deed must be valid and effective as a conveyance in order to operate as an estoppel against the grantor from asserting an after-acquired title.” In 23 Am.Jur.2d Deeds § 305, it is noted that, “The fact that the grantor and grantee are equally cognizant of the grantor’s actual title may affect or preclude the operation of particular provisions of the deed as estoppels against asserting after-acquired title.”
In this case, the 1941 deed from the Ches-leys to Mrs. Sanborn was obtained by her at her instance and request to secure homestead exemption from taxes, which evidently she was continuing to pay. Nothing done by Chesley amounted to conduct prejudicial to Mrs. Sanborn. She was not misled. They both knew, or were charged with knowing, that after Sanborn’s death under the law she had only a life estate, the title being in Marguerite Chesley. On the basis of the homestead, they were again in the situation they were at the death of Sanborn. Under these circumstances, plaintiff cannot rely upon estoppel or after-acquired title.
Plaintiff next questions whether or not he is entitled to the protection of F.S. § 695.01, F.S.A., basing his title on a deed, as heretofore set out, from Mrs. Sanborn dated January 12,1957 and recorded December 30, 1959, against a deed from her dated March 2, 1943 and recorded November 7, 1957. Although he claims he paid a valua.-ble consideration for the property, which was itemized in his brief, he failed to include in his appendix any exhibits or testimony in support of .the items. Th.ere does appear in the defendants’ appendix the plaintiff’s statement in the testimony that he gave Mrs. Sanborn one hundred dollars, “Simply to make the deed legal. She didn’t want to take it.” An inspection of the deed, however, shows a twenty cents state documentary tax stamp affixed to it. From an. examination of the listed items, it appears that they largely consist of sums expended' before the conveyance was contemplated, for the administration of the estate, for transportation, for refinishing furniture left to plaintiff and for cartage. In any event,. Mrs. Sanborn only had a life interest in the property on January 12, 1957
Plaintiff’s last question asks whether or not the lower court erred in finding that the deed to Marguerite Chesley and' her husband was superior to the deed to-plaintiff, he believing that if this court finds that the attempted alienations of the-homestead property were invalid, then he is entitled to some form of equitable estoppel working to estop the defendants from setting up their claims against, it is argued,, innocent third parties, who have changed their position in reliance upon a state of facts allowed to exist through the wilful conduct of the defendants.
The conveyance from Chesley to Mrs.. Sanborn was of her choosing, as apparently was her conveyance a little over a year-later to Marguerite Chesley and her husband, retaining a life interest. This was-the condition without the conveyances — she-had the life interest ánd Marguerite Ches-ley the remainder because it was homestead. It was not found in the evidence that the-defendant, Harrison W. Chesley, did anything to induce anyone to change his position prejudicially.
Affirmed.
ALLEN, C. J., and SMITH, SHERMAN N., Jr., Associate Judge, concur.