GRIMES, Judge.
This is an appeal from a summary judgment quieting the title to certain real property in the defendant.
At the time of his death in 1945, Austin T. Race was the owner of a fifteen acre tract known as “Race Acres.” He left surviving him a widow and four children. All of the parties agree that at the time of Mr. Race’s death, Race Acres was homestead property.
Shortly following Mr. Race’s death, his widow, Anna B. Race, executed a deed purporting to convey Race Acres to their son, Charles, but reserving a life estate in herself. The next year, Charles, joined by his wife, executed a deed of the property to Race and Race, Inc. That corporation then deeded to Charles and his brother, Austin T. Race, Jr. Later Charles and Austin, Jr., joined by their wives, conveyed to Aluminum Irrigation, Inc. About 1950 there were some family negotiations directed toward buying out the plaintiffs’ interests in the property, but the record does not reflect that these transactions were ever consummated.
In 1952 an order of administration unnecessary was entered by the County Judge providing for Mr. Race’s estate to pass to Anna B. Race without administration. The following year Mrs. Race executed a quitclaim deed of the property to Aluminum Irrigation, Inc. Thereafter, a mortgage to Empire Capital Corporation was placed upon the property, and then Aluminum Irrigation, Inc. executed a deed of the property back to Charles and his wife. In 1965 the property was foreclosed by Empire Capital Corporation in a suit joining Charles and his wife and Aluminum Irrigation, Inc. but none of the other children of Austin T. Race. The Certificate of Title was issued to Empire Capital Corporation on February 16, 1966. In September of 1970, Anna B. Race died. Later that year, the property was purportedly conveyed by Empire Capital Corporation to the defendant below.
In March of 1972 the two daughters of Austin T. Race brought suit against the defendant for the partition of Race Acres, each of them claiming a one-quarter remainder interest in the homestead of their father. The defendant attached to her answer and counterclaim copies of quitclaim deeds of the property to Empire Capital Corporation dated January 18, 1971, and purportedly executed by each of the daughters. The defendant acknowledged that the validity of these instruments was in question. The defendant asserted that regardless of the quitclaim deeds, she owned the entire title by virtue of the several conveyances and the order of administration unnecessary. She further contended that in any event she was entitled to have her title quieted by virtue of adverse possession.
The petition for administration unnecessary was executed by Austin T. Race’s widow and each of his four children. It recited that the value of the estate of Austin T. Race after the payment of debts did not exceed $3,000 in the aggregate and stated that the signatories agreed that all of the property of the estate should be distributed to Mr. Race’s widow. The property was not specifically described. The order of administration unnecessary reflected that the decedent left an estate consisting of “Miscellaneous property of less than $3,000 in value.” The order provided that “Anna B. Race, widow, by virtue of an agreement reached among the heirs named above, is the sole person entitled to receive the whole of said estate without administration.”
Im the summary final judgment and the order denying motion for rehearing, the court concluded that the order of administration unnecessary had the effect of vesting the entire title to Race Acres in Anna B. Race, and that by virtue of having signed the petition for this order, the plain *139 tiffs were estopped from asserting- title to the property. Observing that the plaintiffs asserted that their quitclaim deeds to Empire Capital Corporation were forgeries, the court noted that its judgment was in no way predicated upon the validity of these deeds. As a further ground for the judgment, the court held that the defendant and her predecessors in title had established adverse possession for more than seven years.
While it is obvious that the court below conscientiously considered this case, we are constrained to reverse. We do not believe that the order of administration unnecessary passed title to the homestead, and there appears to be a genuine issue of material fact with respect to adverse possession.
The petition for order of administration unnecessary requested an order pursuant to the provisions of § 7.35.04 of the Laws of Florida 1949. That section was a part of Chapter 735 entitled “Administration Unnecessary in Certain Estates.” The provisions of that chapter were designed to dispense with certain procedural steps involving small estates but did not contemplate passing the title to property “exempt under the constitution and statutes of the state [of Florida],” such as homestead. See Bradley v. Raulerson, 1914, 66 Fla. 601, 64 So. 237. The defendant is in no position to say that the petition for order of administration unnecessary constituted an agreement whereby the plaintiffs were giving up their right to the homestead. The property was not described in the petition and there is no dispute that Race Acres was worth more than $3,000. It was clear that the total value of property owned by Mr. Race at the time of his death was in excess of $100,000.
The defendant suggests that the order constituted a distribution of property under § 734.08 which reads as follows:
“734.08 Exempt estates. — If at any time during the course of administration it is made to appear to the county judge by petition that the estate consists of no more than the homestead and exempt personal property of the decedent, or in the event the allegations of said petition are denied by trial of the issues made, he may thereupon direct and order the distribution of said estate among the persons entitled to receive the same, and upon said distribution, may thereupon enter his order relieving, releasing and discharging the personal representative.”
 Even if it could be said that the County Judge was purporting to enter an order under § 734.08 when it is clear that both the petition and order contemplated a proceeding under Chapter 735, the judge would have had no authority to enter such an order because he would have been determining the title to homestead. While the County Judge could determine whether or not certain property constituted homestead, the County Judge had no jurisdiction to determine the title to homestead. In re Weiss’ Estate, Fla.1958, 106 So.2d 411; Wakeman v. Noble, Fla.1954, 73 So.2d 873; Spitzer v. Branning, 1938, 135 Fla. 49, 184 So. 770. As stated in Rothman v. Berk, Fla.App.3d, 1958, 104 So.2d 607:
“But if a homestead was involved, then, under the law relating thereto, a widow would be entitled to a life estate in such homestead (§§ 731.05, 731.27, Fla.Stat., F.S.A.), and the county judge would not have jurisdiction to rule otherwise. ...”
Consequently, the order of administration unnecessary did not legally pass the title to Race Acres.
Insofar as adverse possession is concerned, the depositions and affidavits reflect that the widow lived on the property for awhile after her husband died. Then, Charles and his wife lived there until such time as their interests were foreclosed. The plaintiffs admitted knowing that Charles was living on the property but said that they knew their mother had a *140 right to permit this as long as she was living. Apparently, no one has lived at Race Acres since about 1966. Even though one of them witnessed the 1953 deed executed by Anna to Charles, both plaintiffs denied actual knowledge of the conveyances whereby their mother purported to convey more than her life estate. Therefore, the question arises as to when the possession of Race Acres became hostile to the remainder interests, in view of the fact that life tenant did not die until 1970. The applicable principles are well stated in Wagner v. Moseley, Fla.App.2d, 1958, 104 So.2d 86:
“The law seems to be firmly *entrenched that generally the statute of limitations, laches, or estoppel will not run against a remainderman prior to the termination of the life tenancy where the life tenant’s • conduct is consistent with his duty toward the remainderman. Since during the running of the life estate the remainderman had no right of entry, it follows that neither laches, es-toppel, nor limitations could operate against him by his non-assertion of his rights as a remainderman. There are exceptions or qualifications to this rule. In the case of Commercial Bldg. Co. v. Parslow, 1927, 93 Fla. 143, 112 So. 378, at page 381, the general rule and the exceptions to it are stated with crystal clarity, quoting from :
‘The general rule is that laches, estop-pel, nor the statute of limitations will run against a remainderman prior to the termination of the life tenancy. This rule is, however, predicated on an uninterrupted continuation of the conduct of the life tenant consistent with his duty as such to the remainderman. The rule may not apply where it is shown that the remainderman had actual knowledge of the repudiation or abandonment by the life tenant of his status as such, and of the holding by him of the property under a different and adverse right, or where the life tenant, in good faith and to the knowledge of the remainderman, claims title, not as a life tenant, but through some other source, or where there has been ouster and disseisin of the life tenant or by one claiming by, through or under him, and this under claim of right or color of title followed by adverse possession for the statutory period, or when there is some special independent equity in favor of the purchaser who claims under a conveyance from the life tenant. * *
Defendant’s case for adverse possession may have become stronger when the property was foreclosed and Charles was dispossessed. Yet, for purposes of § 95.16, we cannot tell whether this status existed for more than seven years prior to the time this suit was filed. In any event, the claims of limitation and estoppel are such in this case that they cannot be decided upon summary judgment. The defendant’s argument that her title is perfected by reason of either § 95.22 or § 95.23 is untenable. Reed v. Fain, Fla.1961, 145 So.2d 858; Chasteen v. Chasteen, Fla.App., 1st, 1968, 213 So.2d 509; Brown v. Floyd, Fla. App.1st, 1967, 202 So.2d 215; Cahill v. Chesley, Fla.App.2d, 1966, 189 So.2d 818.
The summary judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.
McNULTY, C. J., and BOARDMAN, J., concur.