McGuel Moralis, *Plaintiff in Error,* v. Julia K. Math-
eson, Joined by her Husband, P. B. Matheson,
*Defendants in Error.*

Opinion filed April 22, 1918.

Petition for rehearing denied June 17, 1918.

1.  Where a grantor in a deed of conveyance containing a war-
    ranty of title has no title to the land which he undertakes to
    convey by his warranty deed, but subsequently acquires title
    thereto, such title passes *eo instanti* to the grantee in the
    first deed.

2.  R and wife having no title to certain land undertook by war-
    ranty deed to convey it to M. SubsequentlyR and wife ac-
    quired the title and upon M's request she and her husband
    executed a deed of conveyance therefor to M's wife. At the
    time of the last transaction, M and his family were living
    upon the land as their homestead. *Held*, that no title was
    conveyed to M's wife by the second deed executed by R and
    his wife, but upon the acquisition of the title by R's wife it
    passed to M by the first warranty deed executed by R and
    his wife to M.

3.  Section 1724 of the General Statutes providing that the title
    of any purchaser of lands who shall have held possession for
    five years under a sale, for full value, free from fraud, made
    by an executor, administrator or guardian shall not be ques-
    tioned by an heir, distributee or ward upon the ground of
    irregularity in the proceedings, if it appear that the proceeds
    of such sale have been applied *bona fide* to the object and
    purpose for which the sale was made, etc., does not apply in
    cases where some unauthorized person assumes to sell the
    real estate of a minor under an order of court and such unau-
    thorized person has neither control nor management of the
    person or estate of the minor; nor does it apply in cases
    where the real estate of the minor is sold under a misap-
    prehension of the fact of ownership by the administrator of
    the estate of another.

Writ of Error to Circuit Court for Lee County, F. A. Whitney, Judge.

Judgment reversed.

*Randell & Lawler,* for Plaintiff in Error;

*Louis A. Hendry* and *Glen Terrell,* for Defendants in Error.

ELLIS, J.—The plaintiff in error, McGuel Moralis, brought an action of ejectment in the Circuit Court for Lee County against Julia K. Matheson and her husband B. P. Matheson to recover an undivided one-third interest in a lot of land in the city of Fort Myers. The defendants pleaded not guilty. A jury was waived, the evidence was heard by the judge who found for the defendants and entered judgment against the plaintiff.

The facts in the case appear to be that William Allen in 1879 acquired by patent from the United States Government a tract of land embracing the lot described in the declaration. That on March 22, 1883, Nancy Allen, widow of William Allen, W. A. Roberts and Eugenia, his wife, who was Eugenia Allen, and Emma Allen, daughters of William, conveyed to A. J. Allen and his wife Nancy A. Allen, and on June 20, 1887, W. A. Roberts and Eugenia his wife conveyed to Miguel Moralis by warranty deed. The deed of March 22, 1887 from Nancy Allen widow and others to A. J. Allen and wife contained a covenant of warranty and seems to have been duly executed and recorded. The same is true as to the deed of June 20, 1887 from W .A. Roberts and wife to Miguel Moralis.

On April 2, 1888, A. J. Allen and wife conveyed to

Eugenia Roberts by warranty deed, which recited that "This deed is given in lieu of one dated 22nd Mch. 1883 for land in Sec. 2 T. 44 R. 24, and recorded in Book M· pp 277 and 278 the 19th day of July, 1884, in Key West, Munroe County, Fla." The deed above referred to from Nancy Allen and others to A. J. Allen and wife dated March 22, 1883, was recorded December 6, 1883, and does not describe land in "Section 2 T 44 R 24." On April 3, 1888, Eugenia Roberts and her husband W. A. Roberts executed a warranty deed to Lucinda Moralis, who was the wife of Miguel, purporting to convey the same lands described in their conceyance of June 20, 1887 to Miguel Moralis, and which embraces the land in this controversy.

Now the plaintiff claims title under his father Miguel Moralis and the defendants under Lucinda Moralis.

Miguel Moralis died in 1894. At the time of his death he was living upon the land with his wife and three children, Augustina, Nellie and the plaintiff McGuel and one other, an infant unmarried, who died shortly after its father, without issue. In 1900 Lucinda Moralis died. At the time of her death she and the three children above named were living upon the place as their home. The plaintiff was born May 16, 1888. He was therefore six years of age when his father died, and twelve years old when his mother died. This action was begun on September 23, 1915, and the defendants appeared November 1, 1915. The action was brought therefore within seven years after the plaintiff became twenty-one years of age.

If the title to the land was in Miguel Moralis at the time of his death the plaintiff inherited a one-fourth undivided interest subject to the widow's dower, and upon the death of the infant before its mother, who died

in 1900, that interest passed to its brothers and sisters who thereupon became seized of an undivided one-third interest each. See Section 1821 Revised Statutes of Florida; Bushnell v. Dennison, 13 Fla. 77.

The defendants offered in evidence the deed from Eugenia Roberts and her husband to Lucinda Moralis dated April 3, 1888, which was about nine months after the same grantors had conveyed the same land by warranty deed to Miguel, husband of Lucinda, which deed had been recorded in Monroe County. The deed to Lucinda contained the following clause: "This deed is given in lieu of a similar deed made to Miguel Moralis June twentieth, 1887, and recorded on 8th July, 1887, in Book P. pages 408, 9 & 10 Monroe County records." There was evidence to the effect that when Eugenia Roberts and her husband conveyed to Miguel they did not have title to the land, but acquiring it shortly afterward thought they should execute a new deed, and Miguel directed them to name his wife Lucinda as grantee.

But if title to the land passed to Miguel under the warranty deed from Eugenia Roberts and her husband after they had acquired the title, their subsequent deed to Lucinda was not effective, because the place being the homestead and being owned by Miguel he could not convey it to his wife, therefore he could not by the method employed vest the title in her.   See Byrd v. Byrd, 73 Fla. 322, 74 South. Rep. 313.

Now the title to the land became vested in Miguel under the warranty deed from Eugenia Roberts and her husband dated June 20th, 1887, although they did not actually acquire the title until sometime afterward.

It has long been settled that "where a grantor sets forth on the face of his conveyance by averment or recital that he is seized of a particular estate in the

premises and which estate the deed purports to convey, the grantor and all persons in privity with him are estopped from ever afterwards denying that he was seized and possessed at the time he made the conveyance. The estoppel works upon the estate and binds an after acquired title as between parties and privies." See French v. Spencer, 21 How. (U.S.) 228, 16 L. Ed. 97; Bush v. Marshall, 6 How. (U.S.) 684; Ackerman v. Smiley, 37 Tex. 211; Russ v. Alpaugh, 118 Mass. 369; Reynolds v. Cook, 83 Va. 817, 3 S. E. Rep. 710; Nye v. Lovitt, 92 Va. 710, 24 S. E. Rep. 345; Robertson v. Wilson, 38 N. H. 48; Croker v. Pierce, 31 Me. 177; Cole v. Raymond, 9 Gray (Mass.) 217; Buford v. Adair, 43 W. Va. 211, 27 S. E. Rep. 260; Locke v. White, 89 Ind. 492; Habig v. Dodge, 127 Ind. 31, 25 N. E. Rep. 182.

In King v. Gilson's Administratrix, 32 Ill. 348, Mr. Justice WALKER, speaking for the court, said in substance that the after acquired title inures to the benefit of the grantee named in a warranty deed executed at a time when the grantor had no title and that it made no difference what the basis of the doctrine is the effect is in all respects the same. See McAdams v. Bailey, 169 Ind. 518, 82 N. E. Rep. 1057, 13 L. R. A. (N.S.) 1003; 8 R. C. L. Subject "Deeds." Sec. 110. In discussing the question Chancellor KENT says: "The estoppel works an interest in the land. An ejectment is maintainable on a mere estoppel. If the conveyance be with general warranty not only the subsequent title acquired by the grantor will inure by estoppel to the benefit of the grantee, but a subsequent purchaser from the grantor under his after-acquired title is equally estopped and the estoppel runs with the land." 4 Kent's Com. 98.

It seems to us to be no answer that the second deed was made to Miguel's wife at his suggestion and with

his full consent because in the first place the after-acquired title of Roberts and wife passed *eo instanti* under their first deed which was to Miguel so that there was nothing to convey; in the second place the lot had become the homestead of Miguel. It became a property which under the constitution was exempt from forced sale under process of any court, and such exemption was of immediate benefit to his children as well as to his wife. It could not be alienated without the joint consent of husband and wife. So that upon the acquisition of the property by the head of the family the children had in it a potential interest protected by certain restrictions as to alienation. The second deed was in effect an attempted conveyance of the homestead by Miguel directly to his wife which in Byrd v. Byrd, *supra*, we said could not be done.

In this view of the case the deed from Eugenia Roberts and her husband to Lucinda Moralis conveyed no title. All the proceedings of the County Judge's Court in the matter of the estate of Lucinda Nicholson assuming her to have been the widow Moralis, were therefore irrelevant because such proceedings in no wise affected the title to the land held by Miguel at his death which under the law of descent became vested in his children subject to the widow's dower.

The defendant claims title under a deed from her husband who claimed under a deed from a commissioner appointed by order of the County Judge to sell the land at private sale, upon the petition of the administrator of Lucinda Nicholson's estate. The land was sold under the proceedings in the County Judge's Court as the property of Lucinda Nicholson.

There is some evidence from which it may be inferred that Lucinda Nicholson was the widow of Miguel Moralis

and married Chas. R. Nicholson who was appointed administrator of her estate. It appears from the evidence submitted to the court below that Chas. H. Scott was appointed guardian of the person and estate of the plaintiff McGuel Morales in 1901. The guardian made his report to the court which showed that he had properly accounted for the funds which came into his hands as guardian and was discharged. These funds were plaintiff's share of the estate of Lucinda Nicholson, but it appears that at the time of her death she had "divers goods, chattels and credits" which presumably were taken over by the administrator and distributed among the heirs, or sold and the money divided. It also appears that the sheriff administered upon the estate of Miguel Moralis, but the land involved in this litigation seems not to have been sold under any proceedings in the administration of the estate. Nor was the land sold by the plaintiff's guardian as the property of his ward, but it was sold by the administrator of the estate of Lucinda Nicholson upon a petition in which it was represented to the court that it was "an utter impossibility to divide the lands so left," among the children.

The proceedings were probably taken under Section 2421 of the General Statutes of Florida, 1906, which provides that an administrator who has control or management of any real estate the property of an infant may sell the same under proper proceedings if he thinks it necessary or expedient to do so. But as administrator of the estate of Lucinda Nicholson he could not have control and management of the real estate of the plaintiff which he inherited from his father.

The defendant however relies upon Section 1724 of the General Statutes of Florida which is as follows: "The title of any purchaser or his assigns who shall have

held possession for five years of any real estate purchased for full value at any sale, free from fraud, made by an executor, administrator or guardian, shall not be questioned by any heir, distributee or ward upon the ground of any irregularity in the proceedings or conveyances, if it appear that the proceeds of such sale have been applied bona fide to the object and purpose for which said sale shall have been made; nor shall such title be questioned by any one else who has received the money to which he was entitled, arising from said sale." That statute was enacted in 1879, its purpose was as its title indicates, "to quiet titles to real estate." It applies in cases where because of some irregularity in the proceedings for the sale of lands belonging to infants the jurisdiction and authority of the court ordering the sale might otherwise be successfully attacked. The statute does not apply in cases where some unauthorized person, assures to obtain an order from a County Judge or other court to sell real estate of a minor over whose person or estate such unauthorized person has neither control or management, nor does it apply in cases where the real estate of the minor is sold under a misapprehension of the fact of ownership by the administrator of the estate of another.

Under the circumstances of the present case the statute has no application to it.

The judgment of the court below is therefore reversed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.