**UNITED STATES of America,
Appellant,
v.
AMERICAN NATIONAL BANK OF
JACKSONVILLE and Title & Trust
Company of Florida, Appellees.**

**No. 16989.**

United States Court of Appeals
Fifth Circuit.

May 26, 1958.

Rehearing Denied June 26, 1958.

5. 92 App.D.C. 256, 207 F.2d 207.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, David O. Walter, Attys. Dept. of Justice, Washington, D. C., Edith House, Asst. U. S. Atty., Jacksonville, Fla., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellant.

W. Gregory Smith, Jacksonville, Fla., Smith & Axtell, Jacksonville, Fla., on the brief, for appellee American Nat. Bank of Jacksonville.

Ray W. Richardson and Patterson, Freeman, Richardson & Watson, Jacksonville, Fla., for appellee Title & Trust Co. of Florida.

Before RIVES, TUTTLE and JONES, Circuit Judges.

JONES, Circuit Judge.

C. Albert Kimbel and his wife, Ida T. Kimbel, owned a residence in Jacksonville, Florida. The title was held as an estate by the entireties. The United States filed tax liens on various dates prior to June 18, 1953, against C. Albert Kimbel for tax assessments aggregating about eleven thousand dollars. Thereafter further liens were filed on tax assessments of about twelve hundred dollars. None of these taxes was a liability of Mrs. Kimbel. On June 17, 1953, Mr. and Mrs. Kimbel gave a mortgage on the residential property to The American National Bank of Jacksonville to secure a note signed by each of them payable to the Bank in the principal sum of $24,000. The mortgage was recorded June 18, 1953. It authorized the mortgagee to advance funds for taxes and insurance premiums. It secured the payment of the principal and interest of the mortgage note, advances for taxes and insurance and, in the event of foreclosure, the costs of foreclosure including attorneys' fees. The mortgage, partly printed and partly typewritten, included among its provisions the following typed clause:

"The Mortgagors hereby agree that the lien of this mortgage shall, in addition to the note hereby secured, secure all sums of money which may now be due or may hereafter become due to the Mortgagee from the Mortgagors. This additional security provision shall remain in effect for so long as the promissory note hereby secured remains unpaid."

The mortgage also contained a printed provision that:

"It is understood that each of the words, note, mortgagor and mortgagee respectively, whether in the singular or plural anywhere in this mortgage, shall be singular if one only and shall be plural jointly and severally if more than one, * * ."

At the time the mortgage was given, the Bank held a collateral note made by Duval Electric Co. This note was dated February 13, 1953. It is signed "Duval Electric Co. C.A.Kimbel, Pres." It pledged warehouse receipts covering electrical equipment and materials. The original principal amount was $7,903.07, which had been reduced to $5,869.66. At the time this note was given, Duval Electric Company was a partnership. There were three partners, C. Albert Kimbel and two others. The note was endorsed by C. A. Kimbel. At the time the mortgage was given, Mr. Kimbel had endorser

liability on a note of T. H. Thompson discounted by the Bank which was payable to and endorsed by Duval Electric Co. in the amount of $600. Interest accrued on all of these obligations. Mrs. Kimbel was not personally liable for the payment of any of them. Mrs. Kimbel died on December 1, 1954. The Bank instituted a suit in the Circuit Court for Duval County, Florida, for the foreclosure of the mortgage. The United States was made a party defendant pursuant to 28 U.S.C.A. § 2410. Invoking 28 U.S.C.A. § 1444, the United States removed the cause to the United States District Court for the Southern District of Florida.

Pending the foreclosure the property was in the custody of a court appointed receiver who collected rents. The property was sold by a special master at foreclosure sale for $35,000. The special master, under order of the court, retained $14,000 to be disbursed upon a determination of lien priorities as between the Bank and the Government. Payment of the remaining funds was made to the Bank. The district court held, initially, that the Bank had a prior lien for the so-called primary obligations consisting of the principal balance of the $24,000 note, interest thereon, property taxes, abstract costs, and attorneys' fees and court costs in foreclosure. The district court also held, initially, that the claims of the United States became liens upon the property on the death of Mrs. Kimbel, that the mortgage did not secure the obligations for which Mrs. Kimbel was not liable, and that the United States should receive the proceeds to the extent of the excess over the primary obligations. Judgment was accordingly entered. On rehearing, it was determined that the mortgage was ambiguous. Parol evidence was received as to the intent of C. Albert Kimbel and Ida T. Kimbel in executing the mortgage with respect to securing the individual obligations of Mr. Kimbel. On this evidence the district court found that it was the intent of Mr. and Mrs. Kimbel that the mortgage should secure the individual obli-

gations of C. Albert Kimbel to the Bank, both those existing at the time of and those incurred subsequent to the mortgage. So finding, the district court concluded that the Bank had a lien for all of the Kimbel obligations, several as well as joint, and irrespective of whether incurred prior or subsequent to the mortgage, and that the Bank's lien was, in its entirety, superior to the claims of the Government. As a result of these determinations an amended judgment was entered awarding all proceeds of the foreclosure sale to the Bank. From this judgment the United States has appealed.

At the time the mortgage to the Bank was given the property was held by the Kimbels as an estate by the entireties. As was recently said by the Supreme Court of Florida,

"The required elements of unity of possession, interest and control peculiar to an estate by the entirety are so well known that an extensive discussion would not be justified. The estate is one peculiar to the relationship of husband and wife and is not available to people in any other relationship. Aside from unity of control, possibly the most important incidents of a tenancy by the entirety are that the survivor of the marriage, whether husband or wife, is entitled to the whole estate and that any property so held is not subject to execution to satisfy the debts of either of the parties individually." Winters v. Parks, Fla., 91 So.2d 649, 651. See Ohio Butterine Co. v. Hargrave, 79 Fla. 458, 84 So. 376; Stanley v. Powers, 123 Fla. 359, 166 So. 843; Vaughn v. Mandis, Fla., 53 So.2d 704; Sheldon v. Waters, 5 Cir., 1948, 168 F.2d 483; 5 Miami L. Q. 592.

▮ We do not question the rule that liens for Federal taxes and the manner of their enforcement are matters which are governed by the Federal law. Bank of Nevada v. United States, 9 Cir., 1957, 251 F.2d 820. However, the rules of property and fixing the incidents of

property ownership are rules of state law which the Federal courts will respect. Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239. The question as to whether a lien for taxes owing to the United States by a husband attached to property held by the entireties was considered by the Eighth Circuit Court of Appeals. It said:

"* * * the individual interest of the husband or wife in an estate by the entirety is, like a rainbow in the sky or the morning fog rising from the valley, not such an estate as may be subjected to the grasp of an attaching creditor or which will permit the adherence thereto of a tax lien. We are not at liberty to change the nature of either." United States v. Hutcherson, 8 Cir., 1951, 188 F.2d 326, 331, affirming Hutcherson v. United States, D.C.W.D.Mo. 1950, 92 F.Supp. 168. See Raffaele v. Granger, 3 Cir., 1952, 196 F.2d 620.

While refraining from concurrence in dicta regarding rainbows and fogs, we express our concurrence in the conclusions of the Hutcherson case regarding the attaching of a tax lien upon an estate by the entireties. Plumb, Federal Tax Collection and Lien Problems, 13 Tax Law Review, 247. The husband, C. Albert Kimbel, did not have any interest in the subject property during his wife's lifetime to which a lien for Federal taxes, owed by him but not by her, could attach. Upon Mrs. Kimbel's death the tax lien attached to the property as of the time of her death. Johnson v. Leavitt, 188 N.C. 682, 125 S.E. 490. Cf. Moralis v. Matheson, 75 Fla. 589, 79 So. 202; Newman v. Equitable Life Assur. Soc., 119 Fla. 641, 160 So. 745. The mortgage, executed by both Mr. and Mrs. Kimbel, had a priority of lien over the tax lien of the Government. The mortgage secured the principal and interest of the note which was specifically described in the mortgage, advances of the Bank for taxes on the mortgaged property and the costs and charges incident to foreclosure. Remaining for our consideration is the question whether the mortgage secured other obligations to the Bank for which C. Albert Kimbel was liable to the Bank.

The mortgage provision which is to be construed is commonly known as a dragnet clause. It has been said that such clauses should be carefully scrutinized and strictly construed. First v. Byrne, 238 Iowa 712, 28 N.W.2d 509, 172 A.L.R. 1072. In construing such a clause in a collateral pledge agreement the Supreme Court of Florida used this language:

"What everybody knows the courts are assumed to know, and of such matters may take judicial cognizance. It is a matter of common knowledge that banking institutions, in transactions wherein they advance money with or without security, dictate the terms upon which such money will be loaned or advanced, and the borrower in such cases must agree to the terms and conditions stated and made by the bank in order to procure the loan. Therefore the court may legally presume that the bank dictated the terms and conditions under which the sum of $2,312 was procured by Aylin from the bank, and the terms and conditions under which the other notes were deposited by Aylin with the bank as collateral security. When this presumption is indulged in, as it was evidently indulged in by the chancellor, then the rule that one of the parties to a contract, having chosen the language applied and being responsible for any alleged uncertainty and ambiguity, must suffer the result of having such language construed against him, may be invoked." St. Lucie County Bank & Trust Co. v. Aylin, 94 Fla. 528, 114 So. 438, 440.

Here it is unnecessary to indulge in a presumption that the words of the dragnet clause are those of the Bank. Its counsel testified that he had inserted the clause in the mortgage. Estates by the

entireties have been regarded with tender solicitude by the Florida courts. Petersen v. Brotman, Fla.App., 100 So. 2d 821.

■ It may well be that the mortgage would not have secured a note given to the Bank by Mr. Kimbel alone or by Mrs. Kimbel alone prior to the execution of the mortgage. The dragnet clause purports to secure sums due the Bank from the "mortgagors". We think the reasoning of the Supreme Court of Georgia is sound. It held:

"Since the 'grantor' consisted of the three individuals who executed the security deed, a note signed by only one of them for a debt of himself alone was not an indebtedness of the grantor within the meaning of the security deed." Americus Finance Co. v. Wilson, 189 Ga. 635, 7 S.E.2d 259, 260. See Monroe County Bank v. Qualls, 220 Ala. 499, 125 So. 615.

The only doubt which we have as to the applicability of the doctrine stated in the foregoing quotation to the case before us arises from the provision that "mortgagor" shall be "plural jointly and severally if more than one." Cf. Torrance v. Third National Bank, 3 Cir., 1914, 210 F. 806; Heffner v. First National Bank, 311 Pa. 29, 166 A. 370, 87 A.L.R. 610. The obligations represented by the note of Duval Electric Co. and Thompson were owed to the Bank by C. Albert Kimbel only as a partner or as an endorser. They were not his liabilities in an individual and personal capacity. In construing the Florida statutes, where the context will permit, "The word 'person' includes * * * partnerships * * *." F.S.A. § 1.01(3). It is unnecessary for our decision here that we determine whether a partnership is a true legal entity. See 40 Am.Jur. 137, Partnership § 18. The Supreme Court has said, "The partnership is a distinct thing from the partners themselves and it would seem that debts of the firm are different in character from other joint debts of the partners." Forsyth v.

Woods, 11 Wall. 484, 78 U.S. 484, 20 L.Ed. 207. So, a fortiori, debts of a partnership differ in character from the debts of a husband and wife or either of them. In an early, but frequently cited, New York case it was held:

"The plaintiff [bank] was dealing with him individually, and it was obtaining security for his individual and personal obligations, and a fair construction of the language shows that it was intended to secure such obligations, and such only. * * * This mortgage must be regarded as a commercial instrument, executed in commercial transactions, and must be construed as ordinary commercial men would understand the language used; and we think that among business men a distinction is made between the firm, as an entity, and the members who compose it; and that this language would not be understood as broad enough to cover the indebtedness of a firm of which Thompson was a member, and for whose debts, jointly with the other members of the firm, he could be made responsible." Bank of Buffalo v. Thompson, 121 N.Y. 280, 24 N.E. 473.

We conclude that it was not the intent of the parties to regard the obligations of a partnership of which the husband was a member as obligations "due to the mortgagee from the mortgagors." If it was intended that the mortgage should secure the obligations of the partnership and the liabilities of C. Albert Kimbel as an endorser, language different from that which was used was required to declare such intent. Heffner v. First National Bank, supra; New Bethlehem Trust Co. v. Spindler, 315 Pa. 250, 172 A. 309. See Waterman v. Alden, 143 U.S. 196, 12 S.Ct. 435, 36 L.Ed. 123; In re Evans, 3 Cir., 1917, 238 F. 543; Torrance v. Third National Bank, supra; Commissioner of Internal Revenue v. Lehman, 2 Cir., 1948, 165 F.2d 383, 7 A.L.R.2d 667. That the rule here stated is the law of Florida is indicated by St. Lucie County Bank & Trust Co. v. Aylin, supra. The

Bank's advances on the partnership paper were to and for the benefit of the partnership. Hence we need not consider whether a different rule would be applicable if the proceeds of the partnership paper had been received by Kimbel individually for his personal use. Cf. Silva v. Exchange Nat. Bank, Fla., 56 So.2d 332. The instrument before the court in the St. Lucie County Bank & Trust Co. case, and in some of the other cases herein cited, was a pledge of personal property rather than a mortgage upon real estate, but there is no reason why the construction of a dragnet clause in one should be different when it is found in the other.

■ C. A. Kimbel was an accommodation endorser upon eleven notes of Duval Electric Company, Inc., a corporation, to the Bank given subsequent to the execution and delivery of the mortgage. It follows, of course, that since the mortgage was not security for Kimbel's pre-existing liability on the note of the partnership and his obligation as an endorser, the subsequent notes of a corporation upon which he was an accommodation endorser were not secured. We think there are further reasons why these subsequent obligations were not secured by the mortgage. To hold that such obligations could be so secured would authorize a husband to so increase the extent of a mortgage lien upon an estate by the entireties without the wife's knowledge as to extinguish the remaining interest in the mortgaged property. Such a construction should not be adopted. First Bank & Trust Co. of Ottumwa v. Welch, 219 Iowa 318, 258 N.W. 96. There was no compliance with the conditions of the Florida statute relating to mortgages securing future advances which requires a statement as to the maximum amount to be secured. F.S.A. § 697.04. Downing v. First National Bank, Fla., 81 So.2d 486.

■ Ordinarily the construction of a contract is a question of law. City of Leesburg v. Hall & Harris, 96 Fla. 186, 117 So. 840. In applying to the dragnet clause of the mortgage the proper rules of construction we do not think there is any ambiguity in the language such as requires extrinsic evidence to ascertain its meaning. O'Brien v. Elder, 5 Cir., 1957, 250 F.2d 275.

Deciding, as we do, that the mortgage to the Bank had priority over the Government tax lien only to the extent of the note of both of the Kimbels, with interest, advances for taxes, and the costs, fees and charges of foreclosure, a different judgment must be entered. To that end, the judgment appealed from is

Reversed and remanded.