**UNITED STATES of America,**
**Plaintiff**

v.

**V. F. BOND et al., Defendants.**
**Civ. No. 1598.**

United States District Court
E. D. Virginia,
Alexandria Division.
March 20, 1959.

6. Wells v. Long, 9 Cir., 162 F.2d 842; Seattle Ass'n of Credit Men v. United States, 9 Cir., 240 F.2d 906.

John J. McCarthy, Frank W. Rogers, Jr., Dept. of Justice, Washington, D C., and Henry S FitzGerald, Asst. U. S. Atty., Alexandria, Va. (Charles K. Rice, Asst. Atty. Gen., and Richard M. Roberts, Dept. of Justice, Washington, D. C., on brief), for plaintiff.

Caldwell C. Kendrick, and Dillard C. Laughlin, Jesse, Phillips, Klinge & Kendrick, Arlington, Va., for Perpetual Bldg. Assn.

ALBERT V. BRYAN, District Judge.

The mortgage of Perpetual Building Association upon the real estate of one Bond and his wife, situate in Arlington County, Virginia, is concededly superior to the lien of the United States for income taxes against the Bonds, the mortgage having been recorded (in form a deed of trust) on July 15, the tax lien December 20, 1955. I.R.C. of 1954, sections 6321 and 6323(a), 26 U.S.C.A. §§ 6321, 6323(a).[1] Now the question is, whether the mortgagee also has the same primacy for 1957 and 1958 County real estate taxes (admittedly of higher rank than the mortgage) paid by Perpetual after the inception of the Federal lien, the 1957 taxes before, and the 1958 after, suit begun by the Government. Moneys, from the sale of the property are not enough to pay all three liens. The question presented was advertently not resolved in United States v. City of New

---

1. "§ 6321. Lien for taxes

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

"§ 6323. Validity against mortgagees, pledgees, purchasers, and judgment creditors

"(a) Invalidity of lien without notice.—Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any

mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate—"

Note—Although the mortgagor-taxpayers have in this suit been found insolvent, the United States has not specifically urged priority on the basis of Rev.. Stat. § 3466, 31 U.S.C.A. § 191, giving the United States priority in the distribution of insolvent estates. However, that statute in the circumstances would not advantage the Government beyond sec.. 6321, supra, because the former is also subject to preexisting valid mortgages. Brent v. Bank of Washington, 1836, 10 Pet. 596, 611, 9 L.Ed. 547.

Britain, 1954, 347 U.S. 81, 87, note 12, 74 S.Ct. 367, 98 L.Ed. 520. Nor was it reached in United States v. City of Greenville, 4 Cir., 1941, 118 F.2d 963.

■ Perpetual prevails here. Anticipated and authorized by the mortgage, the real estate taxes were paid by Perpetual, upon failure of the mortgagor so to do, solely to maintain the integrity of its lien. Such outlays thereupon became secured under the mortgage, evenly with the loan and by a lien of equal dignity, and hence outranked the Government's taxes. Cf.: United States v. American National Bank of Jacksonville, 5 Cir., 1958, 255 F.2d 504, 505, 507, 509, certiorari denied 358 U.S. 835, 79 S.Ct. 58, 3 L.Ed.2d 72, and United States v. Seaboard Citizens Nat. Bank, 4 Cir., 1953, 206 F.2d 62.

I. To defeat Perpetual as the primal lienor for the recapture of the land taxes, the Government's argument is doubly grounded. First: that in seeking refund of the taxes the mortgagee stands as the subrogee of the County, and, as the income taxes attached earlier, they are paramount to the property taxes, and so the subrogee is subordinated to the United States. Second: that payment of the property levies constituted future, optional advances, and these can never be added to a mortgage debt to the prejudice of an intervening junior lienor, as is now the United States.

The frailty of this argument is, initially, that the claim for reimbursement does not invoke subrogation; it relies exclusively on the terms of the mortgage. Next, the subject of the recoupment was not an advance, but rather a maintenance expenditure. 1 Glenn on Mortgages (1943) sec. 43, p. 273. Nor was the payment volitive—the taxes were fixed in amount, and ineradicably impressed upon the property, by law. Nor was the payment post-contractual—it was an explicit undertaking of the mortgage ab ovo.

■ Future advancements, in relation to mortgages, do not include moneys spent to preserve the encumbered property, such as premiums for insurance, custodial costs, restoration expenditures, attorney's fees, taxes assessed and assessable, and similar items rooted in the res. Authoritative discussions of the subject never give these the character of future advances. 3 Glenn on Mortgages, supra, sec. 392, p. 1592, ff.; Osborne on Mortgages (1951) sec. 113, p. 276, ff.; United States v. American Nat. Bank of Jacksonville, supra, 255 F.2d 504.

II. But if the instant tax payments be classed as future advancements, they at once qualify for validity. As noted, neither the amounts, nor the foreseeability, nor the inevitability of the taxes rested on the agreement of the mortgagee. Moreover, the promise of the mortgagor to pay them is written as plainly within the mortgage as is the principal debt. It was not a supervening obligation of the mortgagor, nor an additive disbursement to or for the mortgagor—it was always immanent in the mortgage.

Again, what is required of a mortgagee is determinable by what objectively is demanded to sustain the position of the mortgage—not what personally the mortgagee may elect to do. In default of the owner, a mortgagee pays taxes not merely permissively or optionally, but dutifully. It is necessary to maintain the security. Elsewise, the security would be jeopardized by the incurrence of interest and penalties, by a sale for taxes and by attendant expenses, possibly suit costs and fees. All these sums would have priority over the mortgage lien.

■ Of course, the mortgagee may foreclose at once for non-payment of taxes. So, too, he may for default in interest or principal. But, surely, his indulgence of the mortgagor in further time, would not prefer an otherwise inferior lienor to the mortgagee. Similarly, the mortgagee's forbearance or payment of the taxes could not possibly impair his precedence over a junior lienor.

■ III. With the covenant to pay real estate taxes a real attribute of the mortgage—as essential as the promise to

pay the debt secured—the statute, sec. 6323(a), supra, subordinating Federal taxes to the mortgage must at the same time place them behind the covenant. It is immaterial, therefore, whether the mortgagee paid the taxes, or left them to be paid out of the proceeds of the foreclosure sale in the same manner as the debt. In the latter event the property taxes would be satisfied, according to the mortgage terms, before the Federal lien could touch the proceeds—and the present suit and sale are the equivalent of foreclosure. For the same reasons, no significance is to be found in the 1958 payment having been made by the mortgagee after actual notice (through process in this suit) of the Government's lien.

▮ Unless the statute be so read it will not give the protection intended. This is not to allow a mortgagor-mortgagee agreement to relegate Federal to State taxes. Of course even a local statute could not do that. But it is the recognition of a common term of a mortgage as commonly accepted. If this is not the interpretation of the statute, then a mortgagee can never secure himself, for almost universally land taxes are by State law superior to mortgages. No matter how adequate the security originally, or how cautious the mortgagee, subsequent tax involvements of the mortgagor beyond the prevision of the lender would, otherwise, in every situation cause the mortgagee to lose the amount of the real estate taxes, whether current or delinquent. This results from the generally followed rule of marshaling in a circuity of liens, as exists here—one lien ahead of a second, the second ahead of a third, and the third ahead of the first-named. Exchange Bank & Trust Co. v. Tubbs Manufacturing Co., 5 Cir., 1957, 246 F.2d 141, 143, certiorari denied City of Dallas, Texas v. Tubbs Manufacturing Co., 355 U.S. 868, 920, 78 S.Ct. 118, 338, 2 L.Ed.2d 75, 280 and note 6 with regard to disposition in the State court on remand of United States v. City of New Britain, supra, 347 U.S. 81, 74 S.Ct. 367; Smith v. United States, D.C. Hawaii, 1953, 113 F.Supp. 702, 711;

Samms v. Chicago Title & Trust Co., 1953, 349 Ill.App. 413, 111 N.E.2d 172; 67 Harvard Law Rev. 358 (1953); 63 Yale Law Journal 905, 927 (1954) and at 928, "Such an allocation, however, would violate the federal policy of protecting the mortgagee * * *."

So marshaling now, the amount of the mortgage, principal and interest only, would be segregated from the sale proceeds, the balance paid to the United States, and the land taxes thereafter paid from the mortgage allocation or, rather, since they have already been paid, they would not be reimbursed. To say this is the action of State law is to cavil. The squeeze is forced by the Federal lien. To allow it is to sterilize the statute—according the junior lien of the Government priority over the mortgage.

If the ordinary mortgage covenant for the payment of taxes does not prevent this unjust result, surely the instant mortgage does so with its peculiar provisions. The mortgagor agrees to pay each month not only an amount in interest and amortization of the loan, but also a calculated sum sufficient, when aggregated over a period of months, to meet accruing taxes and insurance premiums. No amount for the periodical curtail is fixed, in figures, either in the note or the mortgage securing it. The sum due on the loan each month is "as provided by or under the Constitution and By-laws" of the Perpetual Building Association. The mortgagor under this arrangement has an account with the mortgagee, pays monthly on the account and the payments are applied, when accumulated, to taxes and insurance. Taxes on the property are, thus, the more immediately secured by the mortgage.

In conclusion, the controversy here is not the preeminence between National and local taxes. The only issue is how comprehensive is the mortgage contemplated by sec. 6323(a). The decision is that the statute embraces every vital covenant of the mortgage.

Let an order be presented effectuating these views, which are now adopted as the fact findings and law conclusions of the court.