# Third District Court of Appeal

## State of Florida

Opinion filed September 24, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-1627
Lower Tribunal No. 13-12270
_____

**BCML Holding LLC,**
Appellant,

vs.

**Wilmington Trust, N.A., etc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Jorge E. Cueto, Judge.

Todd L. Wallen, for appellant.

Lerman & Whitebook and Carlos D. Lerman (Hollywood), for appellee.

Before SUAREZ, C.J., LAGOA and EMAS, JJ.

EMAS, J.

BCML Holding, LLC ("BCML") appeals a final summary judgment in favor of Wilmington Trust, N.A. ("Wilmington") on BCML's counterclaim. For the reasons that follow, we affirm.

**FACTS**

On July 11, 2007, Gonzalo and Daniela Malesich ("Malesich") executed a note and purchase money mortgage which conveyed an interest in a condominium unit at the Murano Grande on Miami Beach to MERS, the nominee of the lender, American Brokers Conduit ("ABC"). The mortgage instrument contained a provision in which Malesich "covenants the Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property. . . ." However, at the time the mortgage was executed, Malesich did not own the subject property; it was owned by RSV Corp. ("RSV").

Five days later, on July 16, 2007, RSV conveyed the property to Malesich via warranty deed. The mortgage and deed were recorded in the public records on August 1, 2007.

Thereafter, MERS assigned the mortgage to Citibank, N.A. In 2010, the Murano Grande Condominium Association ("Murano") initiated foreclosure proceedings on Malesich's unit due to unpaid condominium assessments. Murano obtained summary judgment in its favor and proceeded to the foreclosure sale, at

which Murano was the highest bidder. After the certificates of sale and title were issued to Murano, it sold the property to BCML in 2012.

On April 3, 2013, Wilmington, successor trustee to Citibank, filed a foreclosure complaint against Malesich for default of the July 11, 2007 mortgage. BCML, Murano, and others were also named as defendants in the foreclosure complaint, which alleged a default date of October 1, 2008 (prior to Murano's foreclosure complaint).

BCML answered the complaint, asserting several affirmative defenses, including that Wilmington was estopped from bringing the action. BCML also asserted a two-count counterclaim for declaratory relief and to quiet title, alleging that because Malesich did not own the property on July 11, 2007, when it conveyed an interest in that property, the mortgage was void ab initio.

The parties filed cross-motions for summary judgment on BCML's counterclaim for declaratory relief and to quiet title. Following a hearing, the trial court held that the after-acquired title doctrine applied and granted summary judgment in favor of Wilmington. In its order granting summary judgment, the trial court stated:

> Pursuant to principles of after acquired title, the conveyance by RSV Corp. to Malesich cured any deficiency in the Mortgage arising from the lack of ownership by Gonzalo Malesich of the Property at the time of execution and delivery of the Mortgage. See, *Florida Land Co. v. Williams*, 92 So. 876 (Fla. 1922); *Walters v. Merchants &*

3

*Manufacturers Bank of Elliville*, 67 So. 2d 714 (Miss. 1953); *Cook v. Katiba*, 152 So. 2d 504 (Fla. 1st DCA 1963).

The trial court denied BCML's motion for reconsideration, dismissed BCML's counterclaims with prejudice, and entered final judgment in favor of Wilmington on BCML's counterclaims.[1]  BCML appealed, and we review the issue de novo.  Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126 (Fla. 2000).

## ANALYSIS

Under the doctrine of after-acquired title "if a grantor purports to transfer ownership of real property to which he lacks legal title at the time of the transfer, but subsequently acquires legal title to the property, the after-acquired title inures, by operation of law, to the benefit of the grantee."  Ackerman v. Abbott, 978 A.2d 1250, 1254 (D.C. 2009).  This doctrine

> is a species of estoppel by deed, the principle that a grantor may not deny the truth of a deed against one in whose favor he executed it. Having conveyed title he did not have, when the grantor finally does acquire title, the doctrine operates to vest title automatically in the grantee.

Id. (internal citations omitted).  As the Supreme Court of Florida observed in

Trustees of Internal Imp. Fund v. Lobean, 127 So. 2d 98, 102 (Fla. 1961):

> Legal estoppel or estoppel by deed is defined as a bar which precludes a party to a deed and his privies from asserting as against others and their privies any right or title in derogation of the deed, or from

---

[1] The foreclosure case remains pending below.

4

denying the truth of any material fact asserted therein. In other words legal estoppel contemplates that if I execute a deed purporting to convey an estate or land which I do not own or one that is larger than I own and I later acquire such estate or land, then the subsequently acquired land or estate will by estoppel pass to my grantee.

While this doctrine has been described as a species of estoppel by deed, it has also been characterized as a doctrine grounded in the covenant or warranty of title made by the grantor when conveying the property. See, e.g., Pitts v. Pastore, 561 So. 2d 297 (Fla. 2d DCA 1990) (observing that "a mortgage with covenants of warranty, such as the mortgage involved in this case, permits any title acquired by the mortgagor, after the execution of the mortgage, to inure to the benefit of the mortgagee."). In the instant case, the grantor Malesich, when conveying the property, expressly warranted that he was fully seised of the property at the time of conveyance, and had the right to mortgage, grant and convey the property.

The doctrine of after-acquired title applies to mortgages. See Rose v. Lurton Co., 149 So. 557, 558 (Fla. 1933) (noting "[i]t is now undoubtedly well settled in this jurisdiction that when it is appropriately so worded, a mortgage on after-acquired property of the mortgagor will be held valid, and enforceable between the parties to it, by a suit for foreclosure"); Florida Land Inv. Co. v. Williams, 92 So. 876, 877 (Fla. 1922) (noting the general doctrine that "where a mortgage upon real estate contains full covenants of warranty, title acquired to the mortgaged property the mortgagor after the execution of the mortgage inures to the benefit of the

5

mortgagee"); Pitts, 561 So. 2d at 301 (Fla. 2d DCA 1990) (noting "[i]t is well established that one can enter into a mortgage agreement to create a lien against property which the mortgagor will only acquire in the future. Such a mortgage lien simply fails to attach until the property is purchased" (internal citations omitted)).

BCML argues that the after-acquired title doctrine does not apply as against a non-party to the original mortgage and subsequent purchaser of the subject property. BCML contends it is not a privy or successor in interest and that it cannot be bound by Malesich's covenant or his act in acquiring title after execution of the mortgage. BCML asserts in essence that, as to it, the mortgage was and remains void. We disagree, and conclude that BCML is bound, as a successor in interest, and estopped to deny the existence of title acquired by Malesich after the mortgage was executed.

It has long been settled that:

Where a grantor sets forth on the face of his conveyance by averment or recital that he is seised of a particular estate in the premises and which estate the deed purports to convey, the grantor and all persons in privity with him are estopped from ever afterwards denying that he was seised and possessed at the time he made the conveyance. The estoppel works upon the estate and binds an after-acquired title as between parties and privies.

Moralis v. Matheson, 79 So. 202, 203-04 (Fla. 1918) (emphasis added). See also Lobean, 127 So. 2d at 102 (holding that the doctrine precludes a party to a deed and his privies from asserting as against others and their privies any right or title in

6

derogation of the deed") (emphasis added); <u>Murray v. Newsom</u>, 149 So. 387, 388-89 (Fla. 1933) (holding that the "doctrine of the inurement to the grantee of an after-acquired title by his grantor rests on the principle of estoppel and the question is one of intention. Where it appears to have been the object of the covenant to assure to the grantee the full and absolute enjoyment of the property without any right of the grantor to divest or interfere with the possession at any time thereafter, the deed operates as an estoppel against the claim of the grantor to a subsequently acquired estate, whether a present right passes or not."); <u>Meyers v. American Oil Co.</u>, 5 So. 2d 218, 220 (Miss. 1941) ("To suggest that a grantor who conveys property without title thereto may afterwards maneuver himself, or those in privity with him, into a more advantageous position as respects that property than he could have occupied had he had complete right and title at the time of the conveyance, would be to propose that which upon its face carries its own refutation.")

It is clear from the case law that the after-acquired doctrine "inures to the benefit of the grantee,[2]"—here Wilmington[3] —and that the covenant also "runs with the land," <u>Moralis</u>, 79 So. at 593, binding those who are successors in interest to the grantor as well as the grantee. See also <u>Taylor v. Fed. Farm Mortg. Co.</u>, 193 So. 758, 758 (Fla. 1940) (applying after-acquired title doctrine to the "successor to

---

[2] <u>Murray</u>, 149 So. at 388; <u>Williams</u>, 92 So. at 877.
[3] We find no merit in BCML's additional argument that Wilmington cannot claim the benefit of the doctrine because it is not the original mortgagee. The record establishes that Wilmington is ABC's successor in interest.

the original mortgagee"); Smith v. Urquhart, 176 So. 787, 789 (Fla. 1937) (noting that "the term 'privity' denotes mutual or successive relationship to the same rights or property") (quoting Coral Realty Co. v. Peacock Holding Co., 138 So. 622, 625 (Fla. 1931)); Key West Wharf & Coal Co. v. Porter, 58 So. 599 (Fla. 1912) (holding that a party claiming title under one who is estopped will also be bound by the estoppel); Ackerman, 978 A.2d at 1255; Jacobsen v. Nieboer, 299 N.W. 830 (Mich. 1941); Horowitz v. People's Sav. Bank, 29 N.E. 2d 770 (Mass. 1940); 22 Fla. Jur. 2d *Estoppel and Waiver* § 10 (2015) (noting that the rule applying estoppel to privies includes privies in blood, privies in estate, and privies in law). Thus, once Malesich mortgaged the property, with an express recital that he was "lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey" the property, and thereafter acquired the property described in the mortgage, there existed a valid mortgage inuring to the benefit of the mortgagee (and its successors in interest) and as against the original mortgagee (and its successors in interest). This construction is logical, as it would surely make little sense to permit BCML to thwart the mortgage lien by claiming it was an "innocent" purchaser, especially when it was on notice of the mortgage and deed, which were recorded together two weeks after the property was conveyed, three weeks after the mortgage was executed, and five years before BCML purchased the property. U.S. Bank Nat. Ass'n v. Bevans, 138 So. 3d 1185 (Fla. 3d DCA

8

2014).

BCML also asserts that the doctrine of after-acquired title does not apply because the original transaction was a purchase money mortgage. Under Florida law, a "purchase money mortgage given as part of the transaction in which the premises were purchased is an exception to the general rule that, where a mortgage contains full covenants of warranty, title acquired by the mortgagor after the execution of the mortgage inures to the benefit of the mortgagee." Nelson v. Dwiggins, 149 So. 613, 614 (Fla. 1933). However, this exception does not apply to the instant transaction. While this mortgage was entitled a "purchase money mortgage" it did not represent the type of transaction contemplated by the Florida Supreme Court when it established this exception to the doctrine of after-acquired title. In a typical purchase money mortgage, the mortgage is given by the buyer of the property to the seller of the property to secure the unpaid balance of the purchase price, and the conveyance and mortgage are executed simultaneously. BCML concedes this describes the type of transaction involved in Dwiggins, and further concedes this was not the type of transaction involved in the instant case. Nonetheless, BCML asserts that because courts recognize the type of mortgage at issue as a purchase money mortgage, the exception is applicable and the after-acquired title doctrine should not apply. However, application of the Dwiggins exception is not talismanic. We must first consider the underlying purpose of the

9

exception, and then, in determining its applicability, consider not merely the title or label given to the document, but all of the relevant facts and circumstances surrounding the transaction.

As the Florida Supreme Court explained in Dwiggins, 149 So. at 614, this exception "is based on the idea that it would be unjust to allow a purchase-money mortgage to be foreclosed on any greater title than the seller had conveyed, merely because it contained a covenant of warranty." In other words, because the mortgagee of the property is also the seller of the property, that individual knows whether he is in fact lawfully seised of the property and able to convey full title. Upon foreclosing, this mortgagee should not be permitted to obtain greater title than he could originally have conveyed. The Dwiggins Court further explained:

> [T]he purchase-money mortgage, being foreclosed, should be held limited to the exact interest in the land that had been simultaneously conveyed to the mortgagor by the mortgagee bank's deed, the original vendor's lien of the bank having, as we have held been waived by the new form the transaction took, when the vendor elected to take a mortgage security on the particular interest in the mortgaged property that had been conveyed to the mortgagor by the mortgagee's deed.

Id. (Emphasis added.)

In so holding, Dwiggins cited to Williams, 92 So. at 877, wherein the Court, in discussing after-acquired title, acknowledged "there is a generally recognized exception of purchase-money mortgages given as a part of the transaction in which the premises mortgaged are purchased." (emphasis added). Thus, this exception is

10

limited to those purchase money mortgages involving a simultaneous sale of the property by the mortgagee to the mortgagor. The Court in Williams expounded on the reason for such an exception:

> It would be manifestly unjust to hold that one selling and conveying property which he does not own may, by taking from his grantee contemporaneously with the conveyance to him a purchase-money mortgage, containing the usual covenants of warranty, for a part of the agreed consideration and afterwards, by foreclosing such purchase-money mortgage, acquire title to an ownership of the property, the purchaser in the meantime having in order to protect himself, acquired title to the property by purchase from the owner, the original grantor having refused to purchase such outstanding paramount title.

Id. at 877-78.

The doctrine of after-acquired title is predicated on the notion that an uninformed grantee should not be penalized if the grantor did not own the property at the time of the conveyance, yet subsequently acquired it. 23 Am. Jur. 2d *Deeds* § 278 (2015). Obviously, as in the case of the purchase money mortgage presented in Dwiggins, where the mortgagee is also the one conveying the property to the mortgagor, the mortgagee is fully aware of the nature and extent of the interest being conveyed, and is foreclosed from relying upon the after-acquired doctrine to thereafter acquire greater title than that which it originally conveyed. Such are not the circumstances of the underlying transaction in this case. The original lender, ABC, loaned money to Malesich in exchange for a mortgage on property which Malesich thereafter purchased from a third-party in a subsequent transaction. We

11

conclude that the purchase money mortgage exception to the after-acquired title doctrine does not apply to the instant case.

## CONCLUSION

We hold that the doctrine of after-acquired title applies to the instant case, inuring to the benefit of Wilmington (and against BCML) as successors in interest. We further hold that the exception for purchase-money mortgages is inapplicable given the nature of the original transaction. The trial court was correct in entering summary judgment in favor of Wilmington.

Affirmed.